Paul G. LORETTO, Jr.

v.

UNITED STATES of America.

Civ. A. No. 77–3388.

United States District Court, E. D. Pennsylvania.

Nov. 22, 1977.

Francis R. Lord, Media, Pa., for plaintiff.

Joseph M. Gontram, Tax Div., Dept. of Justice, Washington, D.C., for defendant.

## OPINION

LUONGO, District Judge.

On July 28, 1977, the District Director of Internal Revenue for Philadelphia made a termination assessment[1] of federal income tax liability against the plaintiff, Paul G. Loretto, Jr. At Loretto's request, the Secretary of the Treasury then reviewed the reasonableness of that assessment, pursuant to § 7429(a) of the Internal Revenue Code, 26 U.S.C.A. § 7429(a) (Supp. 1977), and affirmed the District Director. Loretto now seeks judicial review of the termination assessment. 26 U.S.C.A. § 7429(b)(2) (Supp.1977).[2] For the reasons hereafter stated, I conclude that the assessment is "reasonable under the circumstances." 26 U.S.C.A. § 7429(b)(2)(A) (Supp. 1977).

The parties have stipulated to the following facts. Loretto lives with his wife and son in Chester, Pennsylvania, in a house that he and his wife own jointly. On February 10, 1977, Pennsylvania State Police officers, acting pursuant to a search warrant, entered and searched the Loretto home. In the course of their search, the police found $14,050 in cash under a mattress in the bedroom shared by Loretto and his wife. This money was then seized, and it has remained in the custody of the Pennsylvania State Police since the search. The police inventory form, submitted as an exhibit to the stipulation, discloses that the police also found in the home (and seized) an additional $2,418 in cash, two handguns, a quantity of marijuana in excess of three and a half pounds, more than a dozen vials and plastic bags that were suspected to contain cocaine, approximately ten vials and bottles containing unidentified capsules or pills, and a triple-beam balance. Loretto, his wife, and their son were arrested[3] and "charged with conspiracy and with possession with the intent to deliver controlled substances in violation of the laws of Pennsylvania." Stipulation ¶¶ 6, 7. Loretto was convicted in the Delaware County Court of Common Pleas and has filed several post-trial motions; his wife and son were both acquitted of these charges. Finally, Loretto's previous criminal record prior to these charges includes a 1962 guilty plea to "bur-

---

1. This procedure is authorized by § 6851(a)(1) of the Internal Revenue Code, 26 U.S.C. § 6851(a)(1) (1970), *as amended by* Tax Reform Act of 1976, Pub.L. No. 94–455, § 1204(b), 90 Stat. 1520, which provides:
 "If the Secretary finds that a taxpayer designs quickly to depart from the United States or to remove his property therefrom, or to conceal himself or his property therein, or to do any other act (including in the case of a corporation distributing all or a part of its assets in liquidation or otherwise) tending to prejudice or to render wholly or partially ineffectual proceedings to collect the income tax for the current or the immediately preceding taxable year unless such proceeding be brought without delay, the Secretary shall immediately make a determination of tax for the current taxable year or for the preceding taxable year, or both, as the case may be,

and notwithstanding any other provision of law, such tax shall become immediately due and payable. The Secretary shall immediately assess the amount of the tax so determined (together with all interest, additional amounts, and additions to the tax provided by law) for the current taxable year or such preceding taxable year, or both, as the case may be, and shall cause notice of such determination and assessment to be given the taxpayer, together with a demand for immediate payment of such tax."

2. The district court's determination in a case such as this is nonreviewable. 26 U.S.C.A. § 7429(f) (Supp.1977).

3. One William Sill was also arrested in the Loretto home during the search.

glary, larceny, conspiracy, and receiving stolen goods," and a 1967 guilty plea to "larceny and receiving stolen goods." Stipulation ¶ 8.

Affidavits submitted by the Government disclose the following additional facts. In mid-July of 1977, IRS Agent Lamb, upon learning some[4] of the facts just recounted, began to investigate Loretto's financial circumstances. Agent Lamb's inquiry revealed that Loretto had filed no federal income tax return for 1976, and that he had filed a return for 1975 that showed a tax liability of eighty-four dollars. In searching the property records for Philadelphia County and Delaware County (which encompasses Chester, Pennsylvania), Agent Lamb found no assets listed in Loretto's name. Finally, Agent Lamb found no recently-purchased automobiles listed in Loretto's name. Based on this information, Agent Lamb "proposed that [Loretto's] taxable year be terminated" pursuant to § 6851(a) of the Internal Revenue Code. Lamb Affidavit ¶ 11. Based on the same information, James T. Rideoutte, the District Director of Internal Revenue for Philadelphia, determined that Loretto was "designing quickly to place his property beyond the reach of the Government by either concealing it or dissipating it." Rideoutte Affidavit ¶ 2. Rideoutte notified Loretto of this determination in a letter dated July 27, 1977, stating that $5,015.18 in income tax for the period from January 1, 1977 to February 10, 1977 "is due and payable immediately." Exhibit A to Plaintiff's Brief, at 1. On July 28, 1977, Loretto's tax year was terminated for the period from January 1, 1977 to February 10, 1977. Rideoutte Affidavit ¶ 3. This action was taken pursuant to § 6851(a) of the Internal Revenue Code. See note 1 supra.

Loretto now seeks judicial review of the termination assessment, pursuant to § 7429(b) of the Code.[5] Section 7429(b)(2) provides that, in a case of this kind,

"the district court shall determine whether or not—

(A) the making of the assessment under section 6851, 6861, or 6862, as the case may be, is reasonable under the circumstances, and

(B) the amount so assessed or demanded as a result of the action taken under section 6851, 6861, or 6862, is appropriate under the circumstances."

At the outset, two aspects of the district court's task under § 7429(b)(2) require clarification. First, the Government argues that the reviewing court "should give considerable weight and deference to the judgment of the Internal Revenue Service" in cases involving termination assessments. Supplemental Brief of the United States at 3. Although the statute itself is silent on this point, the report of the Senate Finance Committee on this provision of the Tax Reform Act of 1976 states plainly that "the district court is to make independent, de novo determinations" in considering (1) the reasonableness of the assessment, and (2) the appropriateness of the amount assessed. S.Rep.No.94–938 (part I), 94th Cong., 2d Sess. 364–65 (1976), reprinted in [1976] U.S. Code Cong. & Admin.News 3439, 3794. Moreover, the entire legislative history of § 7429(b)(2) demonstrates that this intention was shared by both houses of Congress. The bill originally reported out by the House Ways and Means Committee provided for limited judicial review of termination assessments only in the United States Tax Court. H.R. 10612, 94th Cong., 1st Sess.

---

4. Lamb's affidavit, relating the basis for his eventual recommendation that a termination assessment be made, makes no mention of the handguns found at the Loretto home, and refers only to Loretto's "previous arrest record" rather than to any prior convictions. Lamb Affidavit ¶ 7.

5. Section 7429, added by the Tax Reform Act of 1976, reflects congressional concern over the great hardship that can result from an unjusti-

fied assessment and over the lack of a speedy and effective avenue of judicial review to which an aggrieved taxpayer might turn. See H.R.Rep.No.94–658, 94th Cong., 1st Sess. 301–03 (1975), reprinted in [1976] U.S.Code Cong. & Admin.News 2897, 3197–99; S.Rep.No.94–938 (part I), 94th Cong., 2d Sess. 361–64 (1976), reprinted in [1976] U.S.Code Cong. & Admin. News 3439, 3790–93.

§ 1209 (1975); H.R.Rep.No.94–658, 94th Cong., 1st Sess. 303–04 (1975), *reprinted in* [1976] U.S.Code Cong. & Admin.News 2897, 3199–200. The Senate Finance Committee amended H.R. 10612 to provide for, *inter alia*, review in the district courts, and it used the language quoted earlier in explaining the new provisions. Ultimately, the Conference Committee adopted the Senate amendment, which it described as authorizing "an expedited de novo determination of the reasonableness of the assessment" in district court. H.R.Conf.Rep.No.94–1515, 94th Cong., 2d Sess. 484–85 (1976), *reprinted in* [1976] U.S.Code Cong. & Admin.News 4118, 4189. In short, Congress without doubt intended that the district court make a wholly independent determination on the issue of reasonableness. Therefore, notwithstanding the considerable deference generally accorded to an agency's interpretation of the statute it administers,[6] the district court in reviewing a termination assessment should give no weight whatsoever to either (1) the initial decision by the Secretary (or his designate) that an assessment was justified under § 6851(a)(1) of the Code, or (2) the Secretary's affirmance of that initial decision on administrative appeal. The statute explicitly places the burden of proof with respect to the issue of reasonableness on the Secretary, 26 U.S.C.A. § 7429(g)(1) (Supp.1977), and the reviewing court may not shift this burden by applying a presumption that the Secretary acted reasonably.[7]

■ The second significant aspect of the scope of review under § 7429(b)(2) is that the inquiry is limited to whether or not making an assessment is "reasonable under the circumstances." 26 U.S.C.A. § 7429(b)(2)(A) (Supp.1977). Although the reasonableness standard is somewhat indefinite,[8] and the legislative history unilluminating, a comparison of that standard with two of the standards articulated in the Administrative Procedure Act sheds some light on the intended scope of review under § 7429(b)(2)(A). The Administrative Procedure Act directs the reviewing court to set aside agency actions that are, *inter alia*, either "arbitrary, capricious, . . . or otherwise not in accordance with law," or "unsupported by substantial evidence in a case [involving formal rulemaking]." 5 U.S.C. § 706(2)(A), (E) (1970). Congress apparently intended that termination assessments be reviewed under a standard different than either of these two standards, for it employed different language in describing the applicable standard of review. The problem, then, is where the reasonableness test stands in relation to the "arbitrary and capricious" test and the "substantial evidence" test. A comparison of the three different standards suggests that "reasonable under the circumstances" means something more than "not arbitrary or capricious," and something less than "supported by substantial evidence."[9] *See generally* 5 U.S.C. § 706(2)(A), (E) (1970).

6. *See, e. g., United States v. Consumer Life Ins. Co.*, 430 U.S. 725, 751–52, 97 S.Ct. 1440, 52 L.Ed.2d 4 (1977) (citing cases); *Udall v. Tallman*, 380 U.S. 1, 16–18, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965).

7. With respect to whether the *amount* assessed is appropriate, however, the Secretary is presumed to have acted reasonably and the taxpayer has the burden of proving that the amount assessed is inappropriate. *See* 26 U.S.C.A. § 7429(g)(2) (Supp.1977); H.R.Rep.No.94–658, 94th Cong., 1st Sess. 304 (1975), *reprinted in* [1976] U.S.Code Cong. & Admin.News 2897, 3200; S.Rep.No.94–938 (part I), 94th Cong., 2d Sess. 365 (1976), *reprinted in* [1976] U.S.Code Cong. & Admin.News 3439, 3794–95.

8. As the Supreme Court of Nebraska observed in another context, quoting from an obscure treatise on criminal law, "an attempt to give a

specific meaning to the word 'reasonable' is 'trying to count what is not number, and measure what is not space.'" *Altschuler v. Coburn*, 38 Neb. 881, 890, 57 N.W. 836, 838 (1894).

9. I hasten to add that the distinction between the latter two standards is difficult to articulate, particularly in light of *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). *But see First Nat'l Bank v. Smith*, 508 F.2d 1371, 1376 (8th Cir. 1974), *cert. denied*, 421 U.S. 930, 95 S.Ct. 1655, 44 L.Ed.2d 86 (1975). Professor Davis has catalogued half a dozen attempts to harmonize *Overton Park* with the earlier case law in K. Davis, Administrative Law of the Seventies ¶ 29.00, at 647–52 (1976).

A final issue regarding the reviewing court's task under § 7429(b)(2)(A) requires discussion. The issue is: should the reviewing court take into consideration information bearing on the reasonableness of the assessment that was unavailable to the IRS when it decided to make the assessment? The statute itself is silent on this question, and legislative history provides only a probable answer. As noted earlier, the House Ways and Means Committee originally reported out a bill that authorized only limited Tax Court review of termination assessments. Under that bill, the Tax Court was to determine "(1) whether *there was reasonable cause* for . . . terminating the taxable year; [and] (2) whether the amount assessed . . . *was appropriate* under the circumstances." H.R.Rep.No.94–658, 94th Cong., 1st Sess. 303 (1975), *reprinted in* [1976] U.S.Code Cong. & Admin. News 2897, 3199 (emphasis added). The House report went on to clarify (2): "[T]he issue to be determined is whether, *based on the information then available to the Internal Revenue Service*, the amount of the assessment *is* reasonable." *Id.* 304, [1976] U.S.Code Cong. & Admin.News at 3200. Thus, under the House bill, the Tax Court apparently was to determine both the reasonableness of the assessment and the appropriateness of the amount assessed based only on information available to the Service at the time it acted. The Senate Finance Committee, however, subsequently amended H.R. 10612 in two material respects. Under the amended bill, an aggrieved taxpayer would first seek administrative review by the Secretary, and, if judicial review was ultimately sought, it would be in district court rather than in the Tax Court. H.R.Conf.Rep.No.94–1515, 94th Cong., 2d Sess. 484 (1976), *reprinted in* [1976] U.S. Code Cong. & Admin.News 4118, 4188–89. The Senate Report makes it absolutely clear that neither the initial administrative review nor the judicial review should be confined to information available to the Service when it acted; rather, any relevant information should be considered, both in determining the reasonableness of the assessment and in determining the appropri-

ateness of the amount assessed. S.Rep.No. 94–938 (part I), 94th Cong., 2d Sess. 364–65 (1976), *reprinted in* [1976] U.S.Code Cong. & Admin.News 3439, 3793–94. The report of the Conference Committee states only that the Senate amendment has been adopted, and makes no mention of this evidentiary issue. H.R.Conf.Rep.No.94–1515, 94th Cong., 2d Sess. 484–85 (1976), *reprinted in* [1976] U.S.Code Cong. & Admin.News 4118, 4188–89. A strong inference that the Senate position on this issue was also adopted can be drawn, however, from the language of § 7429(b)(2) as enacted: it requires a determination of whether "(A) the making of the assessment . . . *is* reasonable under the circumstances, and (B) the amount so assessed . . . *is* appropriate under the circumstances" (emphasis added).

 It thus seems fairly clear that the House bill required a determination of whether the assessment was reasonable (and appropriate in amount) at the time it was made, and that the House report language quoted earlier simply spelled out the inconsistency of making this determination based (in part) on information that was unavailable at the time the Service acted. The Senate amendment, on the other hand, contemplated a finding as to whether the assessment "is" reasonable and appropriate, and the Senate report made it explicit that a finding on *present* reasonableness should incorporate all the relevant information presently available. Inasmuch as the conferees adopted the language of the Senate bill, I conclude that the likely intent of Congress was that in determining reasonableness and appropriateness, "the [district] court is to take into account not only information available to the Service at the time of the assessment but also any other information which bears on these issues." S.Rep.No.94–938 (part I), 94th Cong., 2d Sess. 365 (1976), *reprinted in* [1976] U.S. Code Cong. & Admin.News 3439, 3794. Accordingly, I will proceed to evaluate the IRS' conduct in his case based on the facts as stated earlier in this opinion, notwithstanding that Agent Lamb apparently had

not learned some of these facts when he recommended that an assessment be made against Loretto. *See* note 4 *supra.*

■ Although the question is a close one, I conclude that the Secretary has carried his burden of proof as to the reasonableness of this assessment. The inference is not a compelling one, but it is reasonable to conclude from the facts of this case that Loretto was earning income through illegal activities, such as the sale of marijuana and cocaine, and not reporting this income to IRS.[10] This conclusion is supported by the substantial quantities of marijuana and "suspected" cocaine found in the Loretto home, taken in conjunction with the $14,050 also found there and with Loretto's failure to report any appreciable income for either 1975 or 1976. To this conclusion must be added Agent Lamb's inability to locate any assets in Loretto's name that might be used by the IRS to satisfy the tax liability on such unreported income. Thus, the Secretary had sufficient reason to find that Loretto was "designing quickly to place [his] property beyond the reach of the Government by either concealing it or dissipating it." Exhibit A to Plaintiff's Brief, at 1. *See generally* 26 U.S.C.A. § 6851(a)(1) (Supp.1977), set out in note 1 *supra.* Section 6851(a)(1) plainly authorizes a termination assessment based on such a finding, and thus I am constrained to hold that this assessment was "reasonable under the circumstances."

■ Loretto advances several arguments for abatement of the assessment. First, he contends that the Secretary had no basis in fact for the conclusion that Loretto might conceal or dissipate the $16,468 seized during the search of his home, because that money was in the custody of the Pennsylva-

nia State Police when the assessment was made. Nothing has occurred since then, the argument continues, to provide that factual basis; indeed, Loretto "has made no formal demand on the Pennsylvania State Police for the return of the seized currency." Stipulation ¶ 11. I will assume, without deciding, that if Loretto can prevail on this point, the entire assessment would then be vitiated, inasmuch as the total taxable income attributed to Loretto for the terminated year was only $16,655.07. Brief of the United States at 3.

■ Loretto's argument, in essence, is that a termination assessment is invalid unless the taxpayer involved has the *present ability* to conceal or dissipate the assets on which the assessment is based. I cannot accept this contention. Under the circumstances of this case, it is reasonable to conclude that the $16,468 seized in Loretto's home may ultimately be claimed by Loretto or someone acting on his behalf, and that it may then be concealed or dissipated. Loretto points to nothing in the statute or the legislative history that would justify requiring the IRS to stay its hand until the money is actually claimed by Loretto or an agent of his. Common sense suggests, moreover, that such a delay might enable Loretto to conceal or dissipate the money before a new assessment could be made. The IRS might then end up with an assessment against Loretto, but without any assets of his through which the tax liability could be satisfied. I conclude that a precautionary termination assessment is reasonable where, as in this case, the record discloses no assets, other than the funds being held in custodia legis, that the IRS could use to satisfy the taxpayer's tax liability.[11]

---

**10.** Income derived from unlawful activities is taxable income. *See James v. United States,* 366 U.S. 213, 218–20, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961).

**11.** I refer here to Loretto's tax liability as ultimately determined in some later proceeding. My decision that the instant assessment is reasonable in no way validates or approves the amount of Loretto's taxable income as computed by the Service in making this assessment,

nor does it ratify Loretto's tax liability as stated in the notice of assessment that he received. *See* S.Rep.No.94–938 (part I), 94th Cong., 2d Sess. 365 (1976), *reprinted in* [1976] U.S.Code Cong. & Admin.News 3439, 3795:

"A determination made under new section 7429 will have no effect upon the determination of the correct tax liability in a subsequent proceeding. The proceeding under the new provision is to be a separate proceeding which is unrelated, substantively and proce-

Loretto's second argument focuses on the $14,050 found under the mattress in his home. The Secretary has no basis, he contends, for treating that money as income taxable only to Loretto, since it was found in a bedroom that Mr. and Mrs. Loretto share in a house where their son also resides. The short answer to this contention is that Loretto may in fact ultimately establish that, for one reason or another, the $14,050 cannot be attributed to him as taxable income. At this stage, however, the only issue to be decided is the reasonableness of the termination assessment against Loretto. The legislative history of § 7429 makes it abundantly clear that the reviewing court is *not to determine the taxpayer's actual tax liability. See* note 11 *supra.* It would contravene the clear intent of Congress if I were to abate this assessment simply because the Secretary has not proven that the $14,050 represents income taxable to Loretto. It is sufficient that the Secretary acted reasonably in treating the money as income taxable to Loretto, and I hold that he did so.

Finally, Loretto argues that the Secretary failed to comply with the notice requirement contained in § 7429(a)(1) of the Code, 26 U.S.C.A. § 7429(a)(1) (Supp.1977). That section provides as follows: "Within 5 days after the day on which an assessment is made under section 6851(a), . . . the Secretary shall provide the taxpayer with a written statement of the information upon which the Secretary relies in making such assessment." In this case, Loretto was notified on July 27, 1977, and the assessment was made the following day. Since the required notice serves primarily to alert the taxpayer to any basis for contesting the assessment, and since the time limit for requesting administrative review thereof runs from the day the notice is actually provided, I conclude that Loretto was not prejudiced by receiving prior, rather than subsequent, notice of the assessment, and that such prior notice complies with § 7429(a)(1).

durally, to any subsequent proceeding to determine the correct tax liability either by action for refund in a Federal district court or

In summary, I conclude that the Secretary has established that the instant assessment is "reasonable under the circumstances." Treating Loretto's arguments based on the money seized in his home as arguments directed to the inappropriateness of the *amount* of the assessment, I conclude that he has failed to carry his burden of proof on that issue. *See* 26 U.S.C.A. § 7429(g)(2) (Supp.1977).

the Court of Claims or by a proceeding in the Tax Court."