Daniel C. FREISTAK, Plaintiff,

v.

Roscoe L. EGGER, Jr., Commissioner, Internal Revenue Service, Defendant.

Civ. A. No. 82–0995.

United States District Court, M.D. Pennsylvania.

Oct. 13, 1982.

---

Charles A. Glackin, Philadelphia, Pa., for plaintiff.

James J. West, Asst. U.S. Atty., Harrisburg, Pa., Beth A. Kaswan, Asst. U.S. Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM

CALDWELL, District Judge.

Before us for disposition is defendant's motion to dismiss for lack of federal subject

matter jurisdiction. For the reasons discussed hereinafter, the motion will be granted.

## I. Background

The situation from which the current matter developed began on March 3, 1982, when the Internal Revenue Service (IRS) notified Daniel C. Freistak of a balance due immediately on his federal tax return in the amount of $105,314.40. On the same date, the IRS sent Freistak a letter, accompanied by computations of the tax due. The letter also notified Freistak that his narcotics activities[1] were the basis for the government's conclusion that he would attempt to put his assets beyond the reach of collection unless the IRS moved quickly. Accordingly, plaintiff's 1972 Datsun automobile was seized as part of the termination assessment pursuant to section 6851 of the Internal Revenue Code of 1954, 26 U.S.C. § 6851.

The IRS letter also advised Freistak of his rights to administrative and judicial review under section 7429 of the Internal Revenue Code, 26 U.S.C. § 7429. The paragraph of the letter relevant to the current proceeding is as follows:

> You may request a judicial review of the assessment by bringing a civil suit against the United States in the U.S. District Court in the judicial district in which you reside or in which your principal office is located. However, in order to have this action reviewed by the District Court, you must first request administrative review within thirty days after the earlier of (1) the day the Service notifies you of its decision on your protest, or (2) the 16th day after your protest. The Court will make an early determination of the same points raised in your protest to determine whether the making of the assessment is reasonable

under the circumstances or to determine whether the amount assessed or demanded as a result of the action is appropriate under the circumstances. The Court's determination is final and not reviewable by any other court.

On March 18, 1982, Freistak, through counsel, filed a letter of protest against the jeopardy assessment. The letter acknowledged the criminal charges against Freistak and indicated that he had posted bail and, thus, was not incarcerated.

Pursuant to 26 U.S.C. § 7429(b)(1), the filing of the protest triggered the period for requesting review by a United States District Court. The cut-offs delineated in the statute require that judicial review of the assessment must be sought within thirty days of the *earlier* of two periods: sixteen days after one protests the assessment *or* the day the Secretary gives his decision on the protest. Thus, the maximum time within which to seek judicial review is forty-six days, and a lesser period may be mandated.

As applied to the current matter, sixteen days following the protest would be April 3, 1982, and the thirty day period in which to file for judicial review would expire May 3. Under the second time period, the filing deadline would have been August 16[2] since the IRS decision on the protest was dated July 15, 1982. Because the statute requires a request for judicial review be sought before expiration of the earlier of the two time periods, Freistak's request was due by May 3. Freistak is incorrect in his allegation that the first administrative conference held on April 7, 1982, occurred "four days after the first period of permissible recourse to the District Court could be said to have run" [Brief for Plaintiff, p. 8]. The period for seeking judicial review did not

---

1. Freistak had been arrested on March 2 in Cumberland County, Pennsylvania, and in July, 1982, was convicted in a non-jury trial on charges of possession with intent to deliver and conspiracy. According to his memorandum on the current issue, he is pursuing post-trial remedies. We are now informed plaintiff's conviction was upheld by the county court and sentencing will follow.

2. Subsection (d) of the statute excludes Saturdays, Sundays, or legal holidays in the District of Columbia from being counted as the last day of a period. Since August 14, the day on which the thirty days ran, was a Saturday, the last day was extended to August 16.

run until May 3 as our prior discussion has indicated.

■ On August 16, however, through new counsel, Freistak filed a petition to remove the assessment. The petition cited 26 U.S.C. § 7429(b) as authority for jurisdiction and venue in the court of the Middle District of Pennsylvania. The government responded with a motion to dismiss for lack of subject matter jurisdiction. Following a hearing on September 3, 1982, the court granted an extension pursuant to subsection (c)[3] of the statute in order to permit the taxpayer to research and address the jurisdictional issue. We have studied carefully the positions of both parties, as reflected in the briefs, and conclude that the untimeliness of Freistak's petition divests us of jurisdiction in this matter.

II.  The Section 7429 Jurisdictional Issue

Subsection (f) of 26 U.S.C. § 7429 provides that "[a]ny determination made by a district court under this section shall be final and conclusive and shall not be reviewed by any other court." Using this language, Freistak has attempted to persuade us that our acceptance of jurisdiction would be "absolutely nonreviewable," [Brief for Plaintiff, p. 11] and he has cited *Nichols v. United States,* 633 F.2d 829 (9th Cir. 1980), as supporting his position. Reliance on *Nichols,* however, is misplaced as the court therein was confronted with whether certain constitutional and evidentiary determinations were reviewable. The circuit court decided that subsection (f) should not be read so narrowly as to permit review of all matters other than reasonableness and appropriateness of the termination assessment. Instead it held that subject matter jurisdiction in the circuit court was lacking and that the determinations at issue were nonreviewable. Nothing in *Nichols* can be interpreted to infer that a district court's conclusion that it has subject matter jurisdiction cannot be reviewed.

Federal Rule of Civil Procedure 12(h)(3) states: "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court *shall* dismiss the action." (emphasis supplied). Additionally, the case of *Joyce v. United States,* 474 F.2d 215 (3d Cir.1973) expressly held that it is not within the discretion of a federal district court to ignore an absence of subject matter jurisdiction. Numerous cases have adhered to the jurisdictional pronouncement summarized in *Florida Lime & Avocado Growers, Inc. v. W.C. Jacobsen,* 169 F.Supp. 774 (N.D.Cal. 1958):

> The first principle of Federal jurisdiction is that it is the duty of litigants to make clear to the Court the basis of its jurisdiction over the proceeding. Likewise, it is the duty of the Court to make sure that jurisdiction exists. If Federal jurisdiction is not apparent, the Court not only will, but must, refuse to proceed with the determination of the merits of the controversy, unless this failure can be cured. This is true regardless of what stage the case may be in, and whether the defect is called to the Court's attention by suggestion of the parties, or otherwise (citations omitted).

*Id.* at 775–76.

■ Interestingly, *Nichols, supra,* appears to support the government's position in the current matter since in *Nichols* the termination assessment of $177,484.80 (reduced by $21,000 in the district court) was satisfied from funds seized by the Federal Drug Enforcement Agency. Therefore, despite Freistak's eloquent argument that the legislative history behind section 7429 reflects a belief that the IRS would cease the use of termination and jeopardy assessments in drug cases, these procedures appear to have continued to be utilized and Freistak has not been singled out. Moreover, the position of Freistak is not confirmed by the Senate Report on section

---

**3.** 26 U.S.C. § 7429(c) provides:

Extension of 20-day period where taxpayer so requests.—If the taxpayer requests an extension of the 20-day period set forth in subsec-

tion (b)(2) and establishes reasonable grounds why such extension should be granted, the district court may grant an extension of not more than 40 additional days.

7429, S.Rep. No. 94–938, 94th Cong., 2d Sess. 359 (1976), U.S.Code Cong. & Admin. News 1976, p. 2897, which indicates that the aforementioned procedures "were to be utilized to achieve maximum compliance with the internal revenue laws rather than to attempt to disrupt the distribution of narcotics." *Id.* at 362, U.S.Code Cong. & Admin.News 1976, p. 3791. Because the record shows that Freistak had already been arrested before the IRS acted in the present case, we find that the emphasis of the IRS was properly on tax liability rather than interference with drug trafficking.

Additionally, the taxpayer/appellant in *Nichols* requested administrative review under 26 U.S.C. § 7429(a)(2), and "[s]ince the administrative process was not resolved, appellant filed a complaint in the district court pursuant to 26 U.S.C. § 7429(b)." *Id.* at 830. We read this to show what Freistak was required to do in the current matter, i.e., when the administrative process had resulted in no decision on his protest and the forty-sixth day following the submission of his protest arrived, he should have preserved his right to judicial review. Freistak's protest letter indicated that he was not incarcerated and his trial was not held until July. Therefore, we can perceive no reason why Freistak could not have submitted his petition on May 3, as required by the statute. Moreover, Freistak was not attempting to proceed *pro se* on the tax matter but instead had retained counsel. Certainly his attorney had both the duty and the ability to ferret out the meaning of the statute so that Freistak was fully protected.

Freistak has argued that the language of the March 3 letter he received from the IRS was misleading. Assuming that it was, the case of *Zakem v. United States* 78–2 U.S. T.C. ¶ 9584 (W.D.Wis.1978), speaks to the issue. In that case an administrative decision on a taxpayer's § 7429 protest had been made, and the taxpayer filed his petition within thirty days of that decision. Nevertheless, the district court concluded that it did not have jurisdiction since the civil action was filed beyond the forty-six day statutory deadline, i.e., forty-six days after submission of the protest. Moreover, the court concluded that even though a letter from the IRS erroneously advised the taxpayer that he could file suit within thirty days after the administrative decision, that the statutory time limit was jurisdictional and not waivable. Accordingly, the conduct of the IRS official could not estop the government from raising the issue of subject matter jurisdiction. We find the rationale of *Zakem* persuasive and will follow it.

Contrary to Freistak's position, the controlling time periods are completely parallel to those in the present matter. In *Zakem,* the protest was made on March 17, 1978, and the court determined that the last day to seek judicial review was May 2. The administrative decision that occurred on April 12 did not extend the time, and plaintiff's civil action filed on May 9 was, therefore, untimely.

Nothing in the statute requires that an administrative decision be made before it is incumbent upon one to seek judicial review. The thrust of § 7429 is the provision of a speedy, summary determination on reasonableness of the assessment and appropriateness of the amount assessed. Furthermore, as the Senate Report correctly states,

A determination made under new section 7429 will have no effect upon the determination of the correct tax liability in a subsequent proceeding. The proceeding under the new provision is to be a separate proceeding which is unrelated, substantively and procedurally, to any subsequent proceeding to determine the correct tax liability, either by action for refund in a Federal district court or the Court of Claims or by a proceeding in the Tax Court.

*Id.* at 365, U.S.Code Cong. & Admin.News 1976, p. 3795. Freistak, therefore, by our present decision is not being divested of the opportunity to attack the merits of any tax liability claimed against him.

III. Additional Considerations

█ Freistak has presented a number of points beyond those addressed strictly to

the § 7429 jurisdictional issue in his attempt to persuade us of the inequity of the treatment accorded him. Part of his argument is a constitutional one and he claims specifically that his rights under both the fifth and sixth amendments have been violated by the termination assessment. His fifth amendment claim is grounded in an allegation that had he sought timely judicial review, he would have been compelled to testify and would have prejudiced himself for purposes of his subsequent criminal trial. This averment, however, is largely hindsight. The record is completely without support for an argument that Freistak delayed seeking judicial review because he was concerned about a possible need to take the witness stand. Furthermore, had an administrative decision occurred early on, filing in district court would have been required in less than forty-six days. In that event, Freistak would have been faced with exactly the same problem with regard to testifying at the court hearing since a judicial decision must be rendered usually within twenty days and always within sixty days of the filing date of the district court action.[4] *See* n. 3 *supra* and 26 U.S.C. § 7429(b)(2) and (c).

■ Of further import to our finding that Freistak's fifth amendment argument is unpersuasive is the fact that the burden of proof is bifurcated in a § 7429 judicial determination.[5]

In this court proceeding, the Treasury Department has the burden of proof as to whether the making of the jeopardy or

termination assessment is reasonable. (footnote omitted) If an issue is raised as to the reasonableness of the amount assessed, the Treasury Department is required to provide a written statement (such as in its answer to the taxpayer's petition) setting forth its basis for determining the amount assessed, but the taxpayer is required to bear the burden of proof. This is similar to the division of burden of proof in civil fraud cases. The burden of proof as to the reasonableness of the assessment is placed on the Treasury Department because the making of a jeopardy or termination assessment involves more severe consequences to the taxpayer than a normal assessment, and, as in the case of civil fraud, the imposition of these consequences differs substantially from normal assessment and collection procedure.

In determining whether the amount assessed is appropriate under the circumstances, the court is not expected to attempt to determine ultimate tax liability. Rather, the issue to be determined is whether, based on the information then available, the amount of the assessment is reasonable. Thus, for example, in the absence of other evidence made available to the Internal Revenue Service before the proceeding or during the proceeding, an estimate of the taxpayer's liability to date based on information in fact available to the Internal Revenue Service will be presumed to be reasonable.

---

4. For example, if the administrative decision on Freistak's March 18 protest had occurred on March 30, Freistak would have had to seek judicial review by April 29 as the earlier time period controls. Assuming judicial review was sought on April 29, the court decision would have had to be rendered by May 19 or, if an extension occurred, by June 28. Since Freistak's criminal trial was not until July, he still would have had to decide whether to testify regarding the assessment, and the facts as they actually occurred are not uniquely prejudicial as claimed.

5. Subsection (g) of the statute provides:
(1) Reasonableness of termination or jeopardy assessment.—In an action under subsection

(b) involving the issue of whether the making of an assessment under section 6851, 6861, or 6862 is reasonable under the circumstances, the burden of proof in respect to such issue shall be upon the Secretary.
(2) Reasonableness of amount of assessment. —In an action under subsection (b) involving the issue of whether an amount assessed or demanded as a result of action taken under section 6851, 6861, or 6862 is appropriate under the circumstances, the Secretary shall provide a written statement which contains any information with respect to which his determination of the amount assessed was based, but the burden of proof in respect of such issue shall be upon the taxpayer.

Senate Report at 365, U.S.Code Cong. & Admin.News 1976, p. 3794. Thus, the threshold burden is on the government to show that an immediate move against the taxpayer's property was warranted. As the court noted in *McAvoy v. Internal Revenue Service,* 475 F.Supp. 297, 298 (W.D.Mich. 1979),[6]

> The legislative history of section 7429 indicates that a termination assessment under 26 U.S.C. § 6851(a)(1) is reasonable when at least one of the following three conditions is met:
>
>> (1) The taxpayer is or appears to be designing quickly to depart from the United States or to conceal himself;
>>
>> (2) The taxpayer is or appears to be designing quickly to place his property beyond the reach of the Government either by removing it from the United States, or by concealing it, or by transferring it to other persons, or by dissipating it; or
>>
>> (3) The taxpayer's financial solvency appears to be imperiled.
>
> *See* Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1976, H.R.Doc. No. 10612, 94th Cong., 2d Sess. 361 n. 1 & 536 n. 1 (1976).

Freistak has attempted to distinguish his circumstances from those of the taxpayer in *Loretto v. United States,* 440 F.Supp. 1168 (E.D.Pa.1977), wherein a termination assessment was upheld. Freistak's argument, however, is directed to the merits of his case and we cannot reach the merits. We do observe, however, that whether one has few or many personal assets is not determinative of whether one is seeking to evade federal taxation. If anything, Freistak, by discussing *Loretto,* has shown that he had more assets to conceal and/or put beyond the reach of taxing authorities than did Loretto. Whether he designed to do so is an issue we cannot decide.

Freistak's sixth amendment claim is equally unpersuasive. It is based on an argument that he has been denied his right to counsel and cannot fund the appeals in his criminal case. Yet he does have an attorney in the present matter, and the record shows he was represented by counsel through the filing of post trial motions in the criminal proceedings in Cumberland County, Pennsylvania. Nevertheless, the taxpayer's financial problems are not within the purview of this court as our foregoing discussion has shown. Considering such cases as *Nichols* and *McAvoy, supra,* both of which involved drug trafficking, we are unable to conclude that Freistak's failure to follow the deadlines in § 7429 is excusable by this court.

We further note our agreement with the government that the United States as the real party in interest is the proper defendant in this case, even though Freistak has sought to bring action against the Commissioner of the Internal Revenue Service. In fact, § 7429(b)(1) provides that the district court civil action be "against the United States." Under the present circumstances, therefore, the government's sovereign immunity argument must prevail. The United States has not consented to be sued within the time frame Freistak seeks to utilize. Absent a statutory waiver of sovereign immunity, the government is protected from legal action.

Furthermore, as the government has demonstrated, the Declaratory Judgment Act, 28 U.S.C. § 2201, restricts this court from acting in federal tax matters except those pursuant to § 7428, which addresses the status and classification of charitable organizations under § 501(c)(3). Moreover, many cases have concluded that the statute cannot confer subject matter jurisdiction, *see, e.g., T.R. Casey, Inc., v. Harris,* 472 F.Supp. 39 (W.D.Pa.1979), *affirmed* 615 F.2d 1354 (3d Cir.1980); *Pierce v. Catalytic,*

---

**6.** We direct plaintiff's attention to the fact that *McAvoy* was another drug-related tax case. We also note that the court therein determined that the assessment was reasonable since plaintiff had produced no evidence and the government had introduced such matters as alleged involvement in drug trafficking; plaintiff's admitted possession and ownership of over $150,000; and his prior tax returns.

*Inc.,* 430 F.Supp. 1180 (E.D.Pa.1977), nor does it effect a waiver of sovereign immunity.

▮ Finally, the government has contended that the Anti-Injunction Act of the Internal Revenue Code of 1954, 26 U.S.C. § 7421, prohibits us from restraining the assessment at issue here since we have no authority to do so.[7] We agree and also conclude that plaintiff would have difficulty making the requisite showing of irreparable injury since, as previously discussed, his ultimate tax liability has not been litigated to its conclusion.

## IV. Conclusion

After careful consideration of section 7429 and its interaction with other relevant provisions of the Internal Revenue Code, as well as other applicable legal principles, we have concluded that a federal district court lacks jurisdiction over the subject matter in the present action. Accordingly, the case is dismissed. Plaintiff's request to amend his petition to invoke a formal claim for equity relief is denied. Should Freistak wish to pursue this or other avenues of relief, including further legal action, he may do so.

---

**7.** The statute enumerates circumstances under which assessment or collection of tax may be restrained. Section 7429(b) would permit court intervention, but Freistak's untimely invocation of its provisions has precluded judicial review.