ROBERT LEE MCWILLIAMS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4651–92.          Filed August 30, 1994.

*Stevan Douglas Looney,* for petitioner.
*T. Richard Sealy III,* for respondent.

OPINION

PARR, *Judge:* This matter is before the Court on petitioner's motion for review of jeopardy assessment and levy filed August 11, 1994, pursuant to Rule 56.[1] This case was tried in El Paso, Texas, in November 1993.[2]

---

[1] All Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code.

[2] Reply briefs were filed in June 1994. On the date of the jeopardy assessment, the case had not yet been decided.

In the notice of deficiency respondent determined the following deficiencies in and additions to petitioner's Federal income taxes:

*Additions to tax*

| Year | Deficiency | Sec. 6653(b)(1) | Sec. 6653(b)(1)(A) | Sec. 6653(b)(1)(B) | Sec. 6661(a) |
|------|-----------|------------------|---------------------|---------------------|---------------|
| 1986 | $58,761 | - - - | $44,071 | [1] | $14,690 |
| 1987 | 43,247 | - - - | 32,435 | [1] | 10,812 |
| 1988 | 156,393 | $117,295 | - - - | - - - | 39,098 |

[1] 50 percent of the interest due on the portion of the underpayment attributable to fraud.

At trial, the parties made a number of concessions that dramatically reduce the deficiency amounts and additions to tax, including respondent's concession that petitioner is not liable for additions to tax due to fraud. Those concessions are not reflected in the amount assessed. Respondent continues to assert the alternative position that petitioner is liable for additions to tax due to negligence.

When the petition was filed in this case, petitioner resided in New Mexico.

On July, 1, 1994, petitioner sold real property located in Dona Ana County, New Mexico, for $280,000. Petitioner's home had been listed openly with a registered real estate agent for 6 months prior to sale. The proceeds of the sale were disbursed as follows: $41,496.58 to pay off the previously existing mortgage on the property; $20,837.25 for real estate commissions; $32,500 to establish an escrow to be used to pay the disputed Federal income taxes in this case in compliance with a preexisting divorce agreement; $3,370.11 for miscellaneous expenses: title insurance, escrow fees, taxes, etc.; and petitioner received a check for $81,796.06 and took back a second mortgage for $100,000. At the closing petitioner was issued a substitute Form 1099 indicating that he had sold the property for $280,000 and reflecting petitioner's New Mexico post office box address.

Sometime between July 1, 1994, and July 11, 1994, petitioner, accompanied by 16 individuals, moved from Mesquite, New Mexico, to Vancouver, Washington. Petitioner notified the U.S. Postal Service of his new address. We do not know the exact date petitioner notified the Postal Service, but petitioner supplied a copy of an envelope from the New Mexico

bank on which the $81,796.06 check was drawn. The envelope had a Postal Service postmark dated July 11, 1994, and had a Postal Service change of address label affixed to the envelope. For this reason, we know the new address was supplied to the New Mexico Postal Service on or before July 11, 1994.

In a notice dated July 8, 1994, respondent, under authority of section 6861, mailed a notice to petitioner[3] to inform him that he was the subject of a jeopardy assessment. The notice was mailed to petitioner at his New Mexico address by certified mail. Postal Service personnel affixed an address label to the envelope indicating petitioner's new mailing address in Vancouver, Washington. The jeopardy assessment assessed taxes and additions to tax as follows:

| Taxable year | Tax | Additions to tax |
|---|---|---|
| 1986 | $58,761 | $58,761 |
| 1987 | 43,247 | 43,247 |
| 1988 | 156,393 | 156,393 |

Petitioner, on July 11, 1994, deposited the check from the sale of the New Mexico property into a bank account at the Bank of Washington, in Washington State. A letter dated July 18, 1994, from the Bank of Washington, notified petitioner that payment had been stopped on the $81,796.06 check.

In a letter to respondent dated July 21, 1994 (which petitioner indicated was mailed by certified mail, return receipt requested), petitioner through counsel requested an administrative review of the jeopardy assessment by the District Director at Albuquerque, New Mexico, in accordance with section 7429(a)(2). In this document, petitioner provided respondent with his new address. In the review request, petitioner asserted that the making of the jeopardy assessment and levy was not reasonable under the circumstances because none of the required elements of a jeopardy assessment and levy existed; thus respondent was in error. Peti-

---

[3] The jeopardy assessment was also addressed to "Luz Elena McWilliams". According to documents filed with petitioner's current motion, the McWilliamses were divorced on Sept. 13, 1990. Luz Elena McWilliams is not a petitioner in this case. She was originally indicated as a petitioner in this case. However, she neither signed the original petition nor ratified its filing on her behalf, and we ordered her dismissal from the case for lack of jurisdiction; we then ordered the name of the case to be changed to include only petitioner—Robert Lee McWilliams.

tioner also asserted that the amount assessed and collected by respondent was inappropriate.

In a letter dated July 27, 1994, respondent's Appeals officer confirmed the parties' telephone conversation of that date and notified petitioner that the Appeals officer would recommend that the jeopardy assessment should *not* be abated. The Appeals officer stated that he believes the proposed deficiency is in danger of not being collected on the basis that petitioner's property may be dissipated, or that petitioner's financial condition appears to be imperiled, citing section 1.6851–1(a)(1)(ii) and (iii), Income Tax Regs. However, the Appeals officer did include a downward revision of the income tax liability in light of the trial stipulations and concessions. Assuming the IRS would win on all remaining disputed issues, he computed a revised tax liability, exclusive of additions to tax and interest, of $234,734.

In a letter dated August 3, 1994, respondent's Associate Chief of the Appeals Office of the Southwest Region indicated that he had reviewed the District Director's determination and sustained the jeopardy assessment determination, with the provision that the assessment would be adjusted to take into consideration the stipulations and concessions previously agreed to by the parties. In a letter dated August 4, 1994, petitioner asked for a reconsideration of the Appeals officer's determination.

On August 11, 1994, petitioner filed a motion for review of the jeopardy assessment and levy with this Court pursuant to Rule 56. We have jurisdiction to review the assessment and to abate such assessment, redetermine the amount assessed, or take other appropriate action. Sec. 7429(b)(2)(B), (4).[4] This is a case of first impression for our Court.

On August 22, 1994, respondent timely filed her response to petitioner's motion for review of jeopardy assessment. Respondent's response is due 10 days following petitioner's initial motion; however August 21, 1994, was a Sunday, and thus respondent's August 22, 1994, filing is timely. Rules 25(a)(2), 56(d).

---

[4] Sec. 7429 was amended to allow review of certain jeopardy levies issued or assessments made in the Tax Court. Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100–647, sec. 6237, 102 Stat. 3342, 3741. This change applies to jeopardy levies issued or assessments made on or after July 1, 1989.

With her response, respondent specifically answered each of petitioner's allegations and included seven affidavits from individuals to support the jeopardy assessment and levy. The affidavits contain statements that show that on July 5, 1994, the revenue agent (hereinafter RA) who audited petitioner's 1986, 1987, and 1988 Federal income tax returns learned that petitioner had sold his New Mexico property on July 1, 1994. The RA also gathered information that could have led her to believe that petitioner was moving to Washington, Oregon, or Canada. Respondent alleges that the information contained in the affidavits creates a reasonable inference that collection of the deficiency (if respondent is ultimately successful in the pending case) is in jeopardy.

With her response, respondent also included a recomputation of petitioner's tax liability. The recomputation includes taxes, additions to tax, and interest. The recomputed liability totals $318,800.07. By telephone conference with the parties on August 15, 1994, respondent has assured the Court that the assessment is being partially abated to conform with the recomputed potential liability.

If the Commissioner believes the collection of a deficiency in income tax will be jeopardized by delay, then the Commissioner is required to assess such deficiency immediately, with interest, additions to tax, and any other amounts provided by law. Sec. 301.6861–1(a), Proced. & Admin. Regs. If a notice of deficiency has been mailed to the taxpayer before it is discovered that delay would jeopardize the assessment or collection of tax, the Commissioner's jeopardy assessment can be made in an amount greater or less than the amount included in the notice of deficiency. Sec. 301.6861–1(b), Proced. & Admin. Regs.

The Commissioner will make an assessment if collection is determined to be in jeopardy because at least one of the conditions described in section 1.6851–1(a)(1)(i), (ii), or (iii), Income Tax Regs., exists. Sec. 301.6861–1(a), Proced. & Admin. Regs.

Those conditions are: (i) The taxpayer is or appears to be designing quickly to depart from the United States or to conceal himself or herself; (ii) the taxpayer is or appears to be designing quickly to place his, her, or its property beyond the reach of the Government either by removing it from the United States, by concealing it, by dissipating it, or by

transferring it to other persons; and (iii) the taxpayer's financial solvency is or appears to be imperiled. Sec. 1.6851–1(a)(1)(i), (ii), and (iii), Income Tax Regs. When evaluating whether the taxpayer's financial solvency is or appears to be imperiled, the Commissioner is not to "include cases where the taxpayer becomes insolvent by virtue of the accrual of the proposed assessment of tax, and penalty, if any." Sec. 1.6851–1(a)(1), Income Tax Regs.

If the Commissioner makes a finding that the collection of any tax is in jeopardy, notice and demand for immediate payment of such tax may be made by the Commissioner and, upon failure or refusal to pay the tax, immediate collection of the tax by levy shall be lawful. Sec. 6331(a); sec. 301.6331–1(a)(2), Proced. & Admin. Regs. As used in section 6331, the term "tax" includes any interest, additions to tax, and any other amounts provided by law, including assessable penalties, together with costs and expenses. Sec. 301.6331–1(a)(1), Proced. & Admin. Regs.

Within 5 days after the date an assessment is made under section 6861 or levy is made under section 6331(a), the Commissioner must provide the taxpayer with a written statement of the information the Commissioner is relying on in making the assessment or levy. Sec. 7429(a)(1). The taxpayer may request a review within 30 days after the date the taxpayer receives the written statement. Sec. 7429(a)(2). The Commissioner is then required to determine whether the assessment or levy is reasonable under the circumstances and the amount assessed is appropriate. Sec. 7429(a)(3).

Judicial review is permitted if it is requested 90 days from the time the Commissioner notifies the taxpayer of the Commissioner's determination. Sec. 7429(b).

This Court has jurisdiction when a case regarding the taxes that are the subject of the jeopardy assessment is pending before us. Sec. 7429(b)(2)(B); Rule 56(a). We are required to make a de novo determination within 20 days from the filing of a motion for review as to two issues: (1) Whether the making of the jeopardy assessment "is reasonable under the circumstances", and (2) whether the amount assessed is "appropriate under the circumstances." Sec. 7429(b)(3).

Respondent has the burden of proof on the first issue, and petitioner has the burden of proof on the second issue. Sec.

7429(g). If we determine that such assessment is unreasonable, or that the amount assessed is inappropriate, then we may order respondent to release such levy, to abate such assessment, to redetermine in whole or in part the amount assessed or demanded, or to take any other action that we deem appropriate. Sec. 7429(b)(4). Any determination we make is final and conclusive and shall not be reviewed by any other court. Sec. 7429(f).

The standard of proof by which reasonableness must be established is something more than "not arbitrary or capricious" and something less than "substantial evidence". *Davis v. United States,* 511 F. Supp. 193, 197 (D. Kan. 1981) (quoting *Loretta v. United States,* 440 F. Supp. 1172 (E.D. Pa. 1977)); see also *Central de Gas v. United States,* 790 F. Supp. 1302, 1304 (W.D. Tex. 1992), and cases cited therein.

The evidence that is admissible and on which the Court can rely includes evidence that would not be admissible in a civil or criminal trial. See *Central de Gas v. United States, supra; Harvey v. United States,* 730 F. Supp. 1097, 1104 (S.D. Fla. 1990); *Billig v. United States,* 49 AFTR 2d 82–479, at 82–480, 81–2 USTC par. 9792, at 88,635 (N.D. Ga. 1981).

Admissible evidence includes affidavits. *McAvoy v. IRS,* 475 F. Supp. 297, 299 (W.D. Mich. 1979); *Bremson v. United States,* 459 F. Supp. 121, 122 & n.2, 123, 125 & n.11, 127 & n.15 (W.D. Mo. 1978); *Loretto v. United States,* 440 F. Supp. 1168, 1171 & n.4 (E.D. Pa. 1977). Admissible evidence even includes affidavits containing revenue agents' conclusions and opinions. *Bremson v. United States, supra* at 127, 128. Hearsay is also admissible for purpose of review of a jeopardy assessment. *Id.; French v. United States,* 44 AFTR 2d 79–5653, at 79–5654, 79–2 USTC par. 9538, at 87,948 (E.D. Okla. 1979) (information that the revenue agent learned from individuals); *Bean v. United States,* 618 F. Supp. 652, 656–657 (N.D. Ga. 1985) (information that the revenue agent learned from other IRS personnel). Admissible hearsay includes hearsay from confidential sources. *Bean v. United States, supra* at 656 (information that the revenue agent learned from "reliable sources"). Admissible evidence also includes documents submitted as exhibits. *Loretto v. United States, supra* at 1171. And finally, admissible evidence, of course, includes testimony. *Welch v. United States,* 575 F. Supp. 464, 466 (S.D. Miss. 1983); *Bremson v. United States,*

*supra* at 122 n.3; see also *Central de Gas v. United States, supra.*

Thus, we "must consider any information that has a bearing" on the two issues the Court must address. *Central de Gas v. United States, supra; Bremson v. United States, supra* at 125; see also *McAvoy v. IRS, supra* at 298; *Loretto v. United States, supra* at 1173.

This evidence includes information unknown to the Commissioner when he or she made the jeopardy assessment but discovered after that time. *Harvey v. United States, supra; DeLauri v. United States,* 492 F. Supp. 442, 445 (W.D. Tex. 1980); *McAvoy v. IRS, supra* at 298; *Loretto v. United States, supra* at 1173–1174; see also *Central de Gas v. United States, supra.*

In order to establish a reason to believe that the collection of a tax is in jeopardy, the Commissioner typically relies on one of the three conditions listed in section 1.6851–1(a)(1)(i), (ii), or (iii), Income Tax Regs. *Central de Gas v. United States, supra* at 1304–1305; *Harvey v. United States, supra; DeLauri v. United States, supra* at 445; *Fidelity Equip. Leasing Corp. v. United States,* 462 F. Supp. 845, 849 (N.D. Ga. 1978).

Once the taxpayer has properly filed a motion under Rule 56, the Commissioner must file a written response. The response must be received by the Court not later than 10 days after the date on which the taxpayer's motion was received by the Court. Rule 56(d).

If a hearing is required, it will ordinarily be held at the place of trial previously designated, unless otherwise ordered by the Court. Rule 56(e). Although petitioner originally requested a hearing in his motion, he orally waived that request in a subsequent telephonic conference between the parties and the Court on August 15, 1994. The parties agreed to use affidavits in lieu of a hearing, and the Court agreed to give petitioner an opportunity to submit counter-affidavits, so long as this was done within the statutory time period.

On August 24, 1994, petitioner filed his reply and counter-affidavits.[5]

All procedural requirements of this case have been met.

---

[5] Petitioner asks that respondent's Exhibit I be stricken pursuant to Rule 52 as "immaterial, impertinent and scandalous." The exhibit concerns petitioner's religious practices and alleged violent behavior. We agree with petitioner, and we therefore disregard Exhibit I.

In making our decision, we must consider all information available, even information that has become available since the jeopardy assessment and levy were made. *Loretto v. United States, supra* at 1168; *Billig v. United States, supra;* S. Rept. 94–938, at 361 (1976), 1976–3 C.B. (Vol. 3) 1, 373.

In her response to petitioner's motion for reconsideration, respondent asserts that the three conditions in the Income Tax Regs., under section 1.6851–1(a)(1) are not exclusive, citing *Bean v. United States, supra* at 657–658, and *Fidelity Equip. Leasing Corp. v. United States, supra* at 849.

However, in our review of jeopardy assessment cases we have found no case in which an assessment was upheld that did not contain at least one of the three conditions listed in the regulations. Even the two cases respondent cites were determined on this basis, and the language relied upon by respondent is thus dicta. Moreover, other courts have disagreed with respondent's position:

Although the statute itself is silent on what constitutes "reasonableness", Treasury Regulation on Income Tax §1.6851–1(a)(1) sets out three conditions which justify a jeopardy assessment:

\* \* \* \* \* \* \*

Although there is no explicit statutory articulation of these three grounds as the sole criteria of reasonableness, the legislative history supports such a conclusion. See Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1976, H.R. Doc. No. 10612, 94th Cong., 2d Sess. 361 n.1 & 536 n.1. (1976). Furthermore, these standards have been adopted by every court that has considered the question of reasonableness under §7249. \* \* \*

[*Chavarria v. United States,* 53 AFTR 2d 84–821, 84–822 to 84–823, 84–1 USTC par. 9237, at 83,453 (N.D. Cal. 1984).]

Moreover, in the instant case respondent has presented no assertions that would require us to expand the conditions under which a jeopardy assessment would be valid. Since no cases expand the three conditions and since the evidence respondent presents falls within the three established conditions, we decline to expand the number of conditions that justify a valid jeopardy assessment and/or levy.

*Condition 1. Flight*

Respondent asserts that petitioner intended to flee the United States. The income tax regulations first state: "(i) The taxpayer is or appears to be designing quickly to depart from

the United States or to conceal himself or herself". Sec. 1.6851–1(a)(1)(i), Income Tax Regs. Respondent presented affidavits from individuals to support the reasonableness of respondent's contention that petitioner intended to flee to Canada. Some informants told respondent that petitioner was moving to Canada; others said Oregon or Washington.

Petitioner's new address is in Vancouver, Washington, USA. Vancouver, Washington, is located in the southwest corner of Washington State, approximately 250 miles south of Canada. Mobil 1994 Travel Guide Northwest & Great Plains (P-H) 17 (1994).[6]

From the information provided by the parties, it appears petitioner moved July 1, 1994. Sometime before July 11, 1994, petitioner notified the Postal Service that he was moving. July 11, 1994, was the same date petitioner deposited his check from the sale of his property. It may have been the first day, in the process of moving, that he had an opportunity to obtain a post office box in Washington or to open a bank account.

From the affidavits respondent presented, we can understand why respondent prior to July 11, 1994, may have believed that petitioner appeared to be designing quickly to depart from the United States or to conceal himself. However, by the end of July respondent was well aware that petitioner was in Vancouver, Washington, not Vancouver, Canada. Petitioner had supplied respondent with his address, and was actively communicating with respondent through his attorney. Respondent should have realized that the individuals who had provided the information that petitioner was going to Canada might have simply heard "Vancouver" and assumed that meant Canada. Also, if an individual desired to conceal himself, it does not make sense that he would provide his forwarding address to the Postal Service. Moreover, as petitioner points out in his response, he spoke Spanish fluently, had two churches in Mexico, and lived 40 miles from the Mexican border. If petitioner had wished to leave the country, he could have easily done so.

---

[6] Petitioner was previously located in Mesquite, New Mexico. According to affidavits submitted by respondent, Mesquite is close to White Sands, New Mexico. The most northern point of White Sands is within 140 miles of Mexico. Mobil 1994 Travel Guide Southwest & South Central (P-H) 12 (1994).

For the above reasons, we hold the first condition of section 1.6851–1(a)(1), Income Tax Regs., does not justify the jeopardy assessment and levy of petitioner's property. Although it may have been reasonable in early July for respondent to believe petitioner intended to leave the United States, after respondent learned petitioner was living in Vancouver, Washington, and had opened a bank account in his name, it was no longer reasonable for respondent to assert this position as a reason to uphold the jeopardy assessment. See *Harvey v. United States,* 730 F. Supp. 1097, 1104 (S.D. Fla. 1990); *DeLauri v. United States,* 492 F. Supp. 442, 445 (W.D. Tex. 1980); *McAvoy v. IRS,* 475 F. Supp. 297, 298 (W.D. Mich. 1979); *Loretto v. United States,* 440 F. Supp. 1168, 1173–1174 (E.D. Pa. 1977), *Central de Gas v. United States,* 790 F. Supp. 1302, 1304 (W.D. Tex. 1992).

*Condition 2. Placing Assets Out of Reach of the Government*

Respondent asserts that petitioner sold his only substantial asset and that he had left, or was leaving, the country. Respondent also asserts that petitioner has no intention of using any of the proceeds of the sale to pay his taxes. Instead, respondent asserts, petitioner plans to dissipate the funds on living expenses and attorney's and accountant's fees.

The second alternative condition in the regulations is that "(ii) The taxpayer is or appears to be designing quickly to place his, her, or its property beyond the reach of the Government either by removing it from the United States, by concealing it, by dissipating it, or by transferring it to other persons." Sec. 1.6851–1(a)(1)(ii), Income Tax Regs.

The evidence does not support respondent. First, respondent's affidavits present information from a real estate salesperson that indicates that petitioner may have another piece of real estate that he would like to sell. Second, we have already established that petitioner is residing in the United States. Third, respondent provided no evidence that petitioner does not intend to pay his Federal income tax liability. Petitioner, in fact, has acted in a way that indicates he does intend to pay his Federal income tax liability. When petitioner was divorced in 1990, part of the divorce agreement awarded him the marital home, with the provision that when

the home was sold, if disputed Federal income taxes had not been paid, a $32,500 escrow account would be established to aid in the payment of such taxes. Upon the sale of the home on July 1, 1994, petitioner did indeed establish the escrow account. This tends to show that petitioner does intend to pay his Federal income taxes. Fourth, even though taxpayers have a potential outstanding tax liability, they still have a right to continue to pay living expenses and attorney's and accountant's fees.

Respondent fears that petitioner will take the cash received from the sale of his New Mexico property and use it to support 16 individuals who accompanied petitioner to Washington. The information respondent submitted with her response to petitioner's motion shows that the vast majority of petitioner's group were employed in New Mexico. Additionally, the group members were giving a certain percentage of their income to support the group. There is no evidence provided by respondent that this past method of support will not continue in Washington.

Also, petitioner sold his home in New Mexico and moved to Washington. Petitioner states he intended to replace the home with another, not dissipate the proceeds. Petitioner did not attempt to transfer or hide the assets in another person's name; the cash proceeds were openly deposited in a U.S. bank account in petitioner's name.

Moreover, petitioner argues that $32,500 is in escrow for payment of the taxes, so it cannot be in jeopardy. Further, the second mortgage is payable monthly, and likewise cannot be dissipated. Respondent alleged that petitioner attempted to sell the $100,000 mortgage note, but petitioner denies this. Even if true, there are reasons other than the dissipation of assets for petitioner to attempt to liquidate the note. Perhaps petitioner would have done this so that he could have more cash to purchase a new home in Washington.

For the above reasons, we hold the second condition of section 1.6851–1(a)(1), Income Tax Regs., does not justify the jeopardy assessment and levy of petitioner's property.

*Condition 3. Financial Solvency Imperiled*

Respondent alleges that petitioner is dissipating his assets, and respondent's Appeals officer stated that petitioner's

financial condition appears to be imperiled. The third alternative condition in the regulations is that "(iii) The taxpayer's financial solvency is or appears to be imperiled." Sec. 1.6851–1(a)(1)(iii), Income Tax Regs. The regulations require us to evaluate petitioner's solvency *without regard to the tax assessment.* Sec. 1.6851–1(a)(1), Income Tax Regs. Looking only at the evidence presented by the parties, petitioner has $81,000 in cash and a $100,000 note. Petitioner owes his attorney and accountant $30,000. From this information petitioner has a net worth of $151,000. Obviously, this is a very simplified analysis, but this is based on the information we have been presented. We cannot find, based on these facts, that petitioner's financial solvency is imperiled. For the above reasons, we hold the third condition of section 1.6851–1(a)(1), Income Tax Regs., does not justify the jeopardy assessment and levy of petitioner's property.

In a jeopardy assessment case, respondent must prove the assessment and levy are reasonable, and petitioner must prove the amount is inappropriate. Respondent has not proved the jeopardy assessment and levy are reasonable, so we do not need to consider whether the amount as reduced by respondent is appropriate.

Because respondent has not proved that the jeopardy assessment and levy are justified as required, we hold that the jeopardy assessment must be abated and levy thus released.

*An appropriate order will be issued.*