**David W. DAVIS, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 80–1713.

United States District Court, D. Kansas.

Feb. 17, 1981.

John B. Morris, Sargent, Klenda, Haag & Mitchell, Wichita, Kan., for plaintiff.

James P. Buchele, U. S. Atty., Wichita, Kan., and Robert S. Horwitz, Trial Atty., Tax Div., Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM

WESLEY E. BROWN, District Judge.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This is a civil action under 26 U.S.C.A. § 7429 to review jeopardy assessment procedures taken by the Internal Revenue Service [IRS] in determining the 1980 tax liability of plaintiff, David W. Davis, pursuant to 26 U.S.C.A. § 6851.

The case arises out of a search conducted on July 23, 1980, by the Wichita Police Department at plaintiff's residence, in which a quantity of marijuana and over $10,000 in cash were seized by police officers. The IRS thereafter terminated plaintiff's "taxable year" for 1980, issued a jeopardy assessment of income taxes due the United States in the sum of $16,285, and filed lien upon the cash being held by the Wichita Police Department. Following administrative review, the IRS partially abated the assessment, reducing it to $10,349.00. Having exhausted his administrative remedies, plaintiff filed this action for a limited review of the jeopardy assessment, pursuant to 26 U.S.C.A. § 7429.

The Internal Revenue Code contains provisions for the special assessment of taxes when circumstances exist which would make doubtful the collection of certain tax liabilities. There are two separate types of these special assessments: one, a "jeopardy assessment" under Sections 6861 and 6862 of the Code, and the other, a special "termination assessment" under Section 6851 of the Code.. The distinction between the two types is that a "jeopardy assessment" under Section 6861, or 6862 is made for a tax year that has ended and for which the due date of filing a return has passed, while a "termination assessment" under Section 6851 is made for a tax year that either has not ended or for which the due date for filing a tax return has not yet passed. In the instant case, we are dealing with a "termination assessment" under Section 6851 since the assessment against plaintiff, whose tax year ended on December 31, was made on July 25, 1980, for the period January 1 through July 23, 1980.

The authority for, and procedures necessary to the making of termination assessments of income tax, as set out in 26 U.S. C.A. § 6851 are as follows:

(a) Authority for making.

(1) In general. If the Secretary finds that a taxpayer designs quickly to depart from the United States or to remove his property therefrom, or to conceal himself or his property therein, or to do any other act . . . tending to prejudice or to render wholly or partially ineffectual proceedings to collect the income tax for the current or the immediately preceding taxable year unless such proceeding be brought without delay, the Secretary shall immediately make a determination of tax for the current taxable year or for the preceding taxable year . . . and notwithstanding any other provision of law, such tax shall become immediately due and payable. The Secretary shall immediately assess the amount of the tax so determined . . . and shall cause notice of such determination and assessment to be given the taxpayer, together with a demand for immediate payment of such tax.

Under normal tax assessment procedures, there is generally a considerable lapse of time between the first notice of tax deficiency, and the actual enforced collection of the tax. The taxpayer who wishes to contest a proposed assessment·has various administrative remedies and, if no agreement is reached, he may petition the Tax Court, all of this, without the actual collection of the tax claimed. However, when the IRS determines that the collection of tax may be in jeopardy, it may forego usual procedures and immediately assess and collect the tax claimed.

Prior to the enactment of the Tax Reform Act of 1976, P.L. 94–455, no immediate avenue for judicial review of jeopardy assessments was available to taxpayers: (4 U.S.Cong. & Adm.News 1976, 2897, 3789, at p. 390).

The taxpayer who has been subjected to a jeopardy assessment . . . does not have all the protection afforded the ordinary taxpayer during the judicial review. In the normal deficiency case, the Service is prohibited from making an assessment and taking collection action against a taxpayer's property prior to the time allowed for filing a petition for redetermination and during the time litigation is pending in the Tax Court. Although the Service is generally precluded from selling any property seized prior to or during Tax Court litigation, the jeopardy taxpayer—unlike the ordinary taxpayer—loses the use of whatever property has been seized by the Service while relief is sought in the Tax Court.

Section 7429 of 26 U.S.C.A., enacted as a part of the Tax Reform Act of 1976, being Title XII, § 1204(a) of Public Law 94–455, 90 Stat. 1695, provides for both administrative and judicial review of jeopardy tax assessments, including termination assessments under Section 6851 of the Code. The procedures available are as follows:

1. Within five (5) days after a jeopardy assessment is made, under § 6851, the Secretary must provide the taxpayer with a written statement of the information upon which he relied in making the assessment;

2. Within thirty (30) days after the statement is furnished, the taxpayer may request the Secretary to review the action taken;

3. Upon such request, the Secretary must determine "whether or not" making the assessment was "reasonable under the circumstances," and whether the amount of the assessment was appropriate under the circumstances."

After this administrative review, the taxpayer is entitled to bring an action under § 7429 for the purpose of obtaining a limited judicial review of the administrative taxing procedures. Under § 7429(b)(2) the district court is limited to a determination of whether or not

(A) the making of the assessment under section 6851, 6861 or 6862, as the case may be, is reasonable under the circumstances, and

(B) the amount so assessed or demanded as a result of the action taken under section 6851, 6861, or 6862, is appropriate under the circumstances.

If it is determined that the assessment or its amount was unreasonable, the court may order the assessment abated, remand the

matter for redetermination of the amount assessed, or·take such other action as may be appropriate. § 7429(b)(3). Any determination by a district court under § 7429 is final and conclusive, and is not subject to review by any other court. § 7429(f).

■ In determining whether or not the making of an assessment is "reasonable under the circumstances," the burden of proof upon this issue is upon the IRS. In determining whether or not the *amount* of the assessment is "appropriate under the circumstances," the burden of proof is upon the taxpayer, although the Secretary must provide a written statement which contains a description of the information he used in arriving at the assessment.[1]

■ It is clear from the legislative history of the Act that the District Court is to make a *de novo* determination in considering the reasonableness of the assessment and the appropriateness of the amount assessed. See *Loretto v. United States* (E.D. Pa.1977) 440 F.Supp. 1168 at p. 1171. What is reasonable under the circumstances means "something more than 'not arbitrary or capricious,' and something less than 'supported by substantial evidence.'" *Ibid.* at p. 1172.

An evidentiary hearing was had upon plaintiff's complaint. From this evidence, and applying the law applicable to the issues, the Court makes the following findings of fact, and conclusions of law.

## FINDINGS OF FACT

On July 23, 1980, with the authority of a search warrant, Wichita police officers searched plaintiff's residence at 418 South Sheridan, Wichita, Kansas. The police seized a quantity of marijuana, several bottles of marijuana seeds, drug paraphernalia, a locked briefcase and a safe. Plaintiff and his wife were arrested and charged with possession of marijuana with intent to sell.

After the arrest, and at the police station, the briefcase and safe were unlocked. The safe contained a quantity of marijuana and a ledger book recording what appeared to be drug transactions dating back to mid-1979. The briefcase contained another ledger book, a traffic ticket issued to plaintiff, and $10,642.17 in cash. It was estimated that plaintiff had in his possession at the time of his arrest 35 pounds of Columbian grade marijuana, 10 pounds of Hawaiian grade marijuana, and 27 grams of hashish.[2]

. On July 24, 1980, a complaint was filed with the District Court of Sedgwick County, Kansas, charging plaintiff and his wife with possession with intent to sell marijuana, in violation of § 65–4105 K.S.A.

Agents of the Criminal Investigation Division of the Office of the District Director of Internal Revenue at Wichita, Kansas were contacted by the Wichita Police Department on the morning of July 23, 1980. Agents Currie and Blick visited the police department and were informed of the circumstances surrounding the issuance of the search warrant, and they were shown the items seized at the time of the arrest. The agents were informed that Davis had been arrested on two prior occasions on drug related charges and that he had recently been employed by the Kansas Paint and Color Company of Wichita. They were also informed that the police believed that Davis had been involved in illegal drug transactions for four or five years, and that if the

1. § 7429(g) provides:
(g) Burden of Proof.
(1) Reasonableness of termination or jeopardy assessment. In an action under subsection (b) involving the issue of whether the making of an assessment under section 6851, 6861, or 6862 is reasonable under the circumstances, the burden of proof in respect to such issue shall be upon the Secretary.
(2) Reasonableness of amount of assessment. In an action under subsection (b) involving the issue of whether an amount assessed or de-
manded as a result of action taken under section 6851, 6861, or 6862 is appropriate under the circumstances, the Secretary shall provide a written statement which contains any information with respect to which his determination of the amount assessed was based, but the burden of proof in respect to such issue shall be upon the taxpayer.

2. It appears that this estimate was not correct. It was later determined that 38.65 pounds of marijuana were seized at the Davis residence.

money seized was released to Davis, it would probably be reinvested in the drug business. Blick and Currie visited Davis in his jail cell, but Davis refused to answer any of the agents' questions. At this time, the federal agents obtained copies of Davis' accounting records which were seized at the time of his arrest.

Through further investigation, the agents obtained the following information:

1. Drug enforcement agents in Kansas City, Missouri advised the agents that the Hawaiian marijuana was worth $2,000 per pound, while Colombian and Mexican marijuana were worth $400 to $500, and $200 to $400 per pound, respectively.

2. Kansas Paint and Color Company informed the agents that Davis had earned gross wages of $7,796 during 1980, from which $1,596 tax had been withheld.

3. The regional IRS center informed the agents that the Davis' tax returns for 1977–1979 reported the following adjusted gross income:

| | |
|---|---|
| 1977 | $ 6,358 |
| 1978 | 7,748 |
| 1979 | 14,940 |

On July 25, 1980, the District Director of the IRS at Wichita, Kansas determined to terminate Davis' 1980 tax year, and Davis was served notice of this termination by mail. A Notice of Levy upon the cash fund was served upon the Wichita Police Department.

On August 1, 1980, a Notice of Federal Tax Lien with respect to Davis was filed with the Register of Deeds for Sedgwick County, Kansas.

On August 18, 1980, the IRS received a letter from counsel for Davis, informing the Service that he claimed an attorney's lien against the funds being held by the Wichita Police Department. He requested that the Notice of Levy be released so that the funds could be paid over to him.

The amount of the original tax assessment and levy was in the sum of $16,825, assessed on July 25, 1980, after the District Director determined that the revenue was in jeopardy Davis' gross income was computed as follows:

| | |
|---|---|
| Cash (seized) | $ 10,642.00 |
| Cost of Drugs Seized | 27,000.00 |
| Cost of living for family of 4, first 6 months, 1980 | 9,780.00 |
| Less net wages | ( 6,200.00 ) |
| Gross Income | $ 41,222.00 |

The tax on this income for a married individual filing separately, with one exemption, is $15,359, and the self-employment tax would be $1,466.00 for a total of $16,825.

On August 25, 1980, plaintiff filed a request for administrative review of the assessment, claiming that the assessment was unreasonable, and that the amount was inappropriate. In acting on this request, the appeals officer, agent Frey, contacted a DEA agent in Kansas City, Missouri and learned that the $27,000 cost of drugs included in the above figures represented the "street value" of the marijuana, and that the wholesale cost of drugs to a distributor would be only $20,500. Agent Frey also determined that the computation should have deducted from the cost of living figure the taxes that would be included therein, and that plaintiff should have been allowed additional exemptions for his two minor children.

Frey's recomputation of Davis' income upon the administrative review was as follows:

| | |
|---|---|
| Cash Seized | $ 10,642 |
| Cost of Drugs Seized | 20,500 |
| Cost of Living, 6 mos. | 7,926 |
| | $ 39,068 |
| Less Net Wages Earned | ( 6,200 ) |
| Less 3 Exemptions | ( 3,000 ) |
| Gross Income | $ 29,868 [Ex. "L"] |

The income tax due on this amount of gross income would be $8,833, and the self employment tax would be $1,466, for a total tax of $10,349. Following this recomputation, the IRS abated $6,476 of the original assessment.

At trial, there was conflict in the testimony as to the grade of the marijuana seized at the Davis residence. Plaintiff's witness

Rathbun was of the opinion that none of it was the expensive Hawaiian variety, and that instead, the two varieties were "high-grade" Mexican marijuana, of a value of approximately $250 per pound, and that the remainder was Kansas marijuana, of the value of $80 per pound.

Also at trial the federal agent Frey re-computed the tax liability in order to reflect an error in the amount of marijuana seized (the correct amount being 10 pounds of Hawaiian grade and 28.65 pounds of lower grade, for a total of 38.65 pounds), and also to correct an erroneous credit of $6,200 for "earned income" which appeared in the first computations. The new computations reveal tax liabilities of $12,662 or $10,969, depending upon the value set for the marijuana. Thus, Exhibit "U" provides the following summary of liability:

Income:

| | | | |
|---|---|---|---|
| Cash Seized | | | $ 10,642 |
| Marijuana Seized | | | |
| 10 lbs. at | $1,000 | $10,000 | |
| 28.65 lbs. at | 300 | 8,595 | 18,595 |
| Cost of Living | | | 7,926 |
| Gross Income | | | $ 37,163 |
| Less Exemptions (3) | | | ( 3,000 ) |
| Taxable Income | | | $ 34,163 |
| Tax (married filing separately) | | | 12,087 |
| Self Employment Tax | | | 1,466 |
| | | | $13,553 |
| Less Federal Withholding | | | ( 891 ) |
| (Tax) | | | $ 12,662 |

Exhibit "V" provides a tax summary if it be assumed that the entire amount of marijuana be valued at $400 per pound:

| | |
|---|---|
| Cash | $ 10,642 |
| Marijuana Seized: 38.65 lbs at $400 | 15,460 |
| Cost of Living | 7,926 |
| Total Income | $ 34,028 |
| Less Exemptions (3) | ( 3,000 ) |
| Taxable Income | $31,028 |
| Income Tax | 10,394 |
| Self-Employment Tax | 1,466 |
| | $ 11,860 |
| Less Federal Withholding | ( 891 ) |
| (Tax) | $ 10,969 |

Yet another computation was introduced by plaintiff at trial, this time, based upon his valuation figures. In this computation, with the marijuana valued ten pounds at $80.00 and 22.7 pounds at $250 per pound, total net tax due was set at $6,486.00, which was the approximate figure suggested by Davis at the appellate conference, leading to partial abatement of the tax. (Testimony, Frey).

■ While there is some discrepancy in figures, as described above, the Court finds the government's valuations to be more credible, particularly since they were supported by notations and computations which appeared in the seized ledgers.[3] However, and in any event, the Court need not determine Davis' tax liability in this action the only question at issue in this case is the reasonableness of the termination assessment and the question of whether or not the Secretary "acted reasonably in treating the money as income taxable" to plaintiff Davis. *Loretto v. United States, supra,* 440 F.Supp. at 1175. The court is not required to make any finding of actual tax liability

3. See Frey affidavit, Exhibit "S". Frey, the appeals officer, received information that the wholesale value of Hawaiian marijuana could be $1,000 to $1,200 a pound and Columbian marijuana was $400 per pound, which a wholesaler might mark up 25% to dealers.

On a number of pages in the ledger books which were seized with the cash, there were figures such as "1/375–375, 5/375–1875; and 14/375/5180." As these figures appeared in conjunction with entries relating to sales by Davis, Frey interpreted them to mean, "1 pound sold at $375 a pound," and 14 pounds at $375, sold for $5180." He therefore assumed that Davis sold the Columbian marijuana at $375 a pound. Taking into account the 25% markup, Frey determined that Davis purchased Columbian marijuana for approximately $300 per pound.

In a similar fashion, other groups of figures— "10.9444933 × 1050 = 11490;  17.539647 × 975 = 17101, and 18.134361 × 975 = 17681" appeared to correspond to information that Frey had received concerning the wholesale price of Hawaiian marijuana. He concluded from these figures that Davis had been purchasing Hawaiian marijuana at prices ranging from $975 a pound to $1050 a pound, with an average cost of approximately $1000 a pound.

for it need determine only whether the amount assessed was "appropriate under the circumstances." See *McAvoy v. Internal Revenue Service* (W.D.Mich.1979), 475 F.Supp. 297, 298; *Haskin v. United States* (C.D.Cal.1977) 444 F.Supp. 299, 304.

■ The Court is of the opinion, and so finds as a matter of fact, that the amount of the tax liability as assessed by the Service, and as partially abated upon administrative appeal, that is, the sum of $10,349, was, and is reasonable under the circumstances present in this action.

■ Under the law, a termination assessment may be made whenever the Service reasonably believes that the collection of the Internal Revenue may be frustrated or jeopardized by delay. Thus action may be taken when a taxpayer is or appears to be planning to depart from the United States or to conceal himself; when a taxpayer is or appears to be designing to place his property beyond the reach of the government through concealment, dissipation, or other acts, or when the taxpayer's financial solvency appears to be imperiled. See *Fidelity Equipment Leasing Corp. v. United States*, 462 F.Supp. 845 (N.D.Ga. 1978).

Plaintiff here urged that the termination assessment, in and of itself, was unreasonable, inasmuch as he was possessed of sufficient assets to satisfy any tax liability that he may have had, so that the collection of tax was not "in jeopardy."

■ In this respect, the evidence presented at the hearing revealed that plaintiff maintained only a small balance in his checking account of $202.85 and large accrued credit card debts of $3,164.89. Plaintiff did not take the witness stand and did not offer any evidence which would indicate that the money found in the briefcase could be traced to prior reportable income. Other Exhibits ("M", "N" and "Q–1") established that plaintiff had not previously reported sufficient income to explain a cash down payment which he had made on his house. Under these circumstances it was reasonable to infer that Davis' possession of a large amount of marijuana and cash strongly indicated that he had earned unreported income through drug sales, and that taxes were due upon this income.

■ In addition to the checking account mentioned above, Davis' assets consisted of two old motor vehicles and his equity in the home owned jointly with his wife. While there may be some dispute as to the value of this equity, over and above the balance due upon the mortgage, under the law of Kansas, the government is prevented from foreclosing its tax liens against real estate owned jointly by husband and wife. See *United States v. Hershberger*, 475 F.2d 677 (10 Cir. 1973).

Under the evidence discussed above, it was reasonable for the Secretary to find that Davis' actions did tend to prejudice or to render wholly or partially ineffectual any proceedings to collect Davis' tax liability at some later date, and that the termination assessment was in this instance reasonable in all respects.

## CONCLUSIONS OF LAW

The court has jurisdiction of this action under the provisions of 26 U.S.C.A. § 7429(b).

Section 7429(b) "contemplates that a summary proceeding be conducted by federal district courts for the purpose of making an independent determination as to the reasonableness of the making of a jeopardy assessment and appropriateness of the amount of this assessment." *Haskin v. United States, supra*, 444 F.Supp. 299 at p. 304; *Loretto v. United States, supra*, 440 F.Supp. 1168.

Under the evidence in this action, it was and is reasonable to conclude that Davis during 1980, was earning illegal income through the sale of marijuana and not reporting that income to tax authorities. It was further established through discovery of the large sum of money found in the briefcase, the small sum kept in the checking account, and the absence of any other assets which would be subject to levy, that Davis had placed his property beyond the reach of the government.

Under these circumstances, the Secretary, in making the termination assessment in this case, "acted reasonably under the circumstances," and the defendant United States has met its burden of proof prescribed in 26 U.S.C.A. § 7429(g)(1).

The amount of the termination assessment, as abated on September 15, 1980, by the Internal Revenue Service upon administrative appeal, to the sum of $10,349.00, was "appropriate under the circumstances." Plaintiff Davis has failed to meet his burden of proof prescribed in 26 U.S.C.A. § 7429(g)(2) by failing to establish that this sum was in any manner "inappropriate."

Since this court, in this action, is not empowered to determine the actual tax liability of plaintiff Davis, and since such question is beyond the scope of this court's review, the suggestion by the government that the court should "correct" the amount of the termination assessment by raising it to the sum of $12,662 as exemplified in Exhibit "U" is overruled and denied.

In accordance with the foregoing Findings of Fact and Conclusions of Law, the Clerk of this Court is directed to enter Judgment in favor of the defendant United States of America in this action.

IT IS SO ORDERED.