#### Albert Lee SIMPSON

v.

#### INTERNAL REVENUE SERVICE United States Department of the Treasury, and Joseph G. Humbert, and United States of America.

No. 3–83–0423.

United States District Court,
M.D. Tennessee,
Nashville Division.

June 29, 1983.

Edward M. Yarbrough, Nashville, Tenn., for plaintiff.

Bob Rice, Trial Atty., Civ. Tax Div., U.S. Dept. of Justice, Washington, D.C., Joe B. Brown, U.S. Atty., Nashville, Tenn., for defendants.

## MEMORANDUM

MORTON, Chief Judge.

This case is a petition for review of a termination assessment made against the plaintiff on May 2, 1983. On April 12, 1983, the District Director of the IRS notified the plaintiff that pursuant to 26 U.S.C. § 6851 the taxable period from January 1, 1983, through April 4, 1983, was being terminated and that taxes in the amount of $163,149.01 were being assessed. In accordance with the plaintiff's request, an IRS appeals officer reviewed the assessment and found it reasonable and appropriate under the circumstances. The plaintiff now seeks judicial review of the termination assessment.

In conducting such a review, 26 U.S.C. § 7429(b)(1) limits the court's inquiry to whether the termination assessment is reasonable under the circumstances and whether the amount assessed is appropriate under the circumstances. Title 26 U.S.C. § 6851 authorizes the Secretary of the Treasury to make a termination assessment upon finding that a taxpayer "designs quickly ... to do any ... act ... tending to prejudice or to render wholly or partially ineffectual proceedings to collect the income tax for the current or immediately preceding year." The legislative history of section 7429 indicates that an assessment is reasonable under the circumstances when any of the following three conditions are met:

(1) The taxpayer is or appears to be designing quickly to depart from the United States or to conceal himself;

(2) The taxpayer is or appears to be designing quickly to place his property beyond the reach of the Government either by removing it from the United States, or by concealing it, or by transferring it to other persons, or by dissipating it; or

(3) The taxpayer's financial solvency appears to be imperiled.

See Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1976, H.R.Doc. No. 10612, 94th Cong., 2d Sess. 361 n. 1 & 536 (1976), *quoted in McAvoy v. Internal Revenue Service*, 475 F.Supp. 297, 299 (W.D.Mich.1979).

The present assessment against the plaintiff was made following his arrest on

April 2, 1983, for possession of marijuana. The Nashville Metropolitan Police Department had placed the plaintiff under surveillance after a DEA agent informed them that the plaintiff sold illegal drugs. On the evening of the arrest, police officers followed the plaintiff to residences at Chester Avenue and Kassia Street in the City of Nashville, Tennessee. After the plaintiff left the second residence, the officers stopped him and searched his truck. They found it contained approximately one-half ounce of marijuana, burlap bags containing marijuana residue, and a quantity of cash. The officers then proceeded to search the plaintiff's residence on Greer Road. There they found more cash (bringing the total cash found in the truck and home to approximately $33,000), a cash counter, approximately 3 pounds of marijuana, burlap bags containing marijuana residue, other illegal drugs, and a document which appeared to be a sum of various denominations of cash. The officers then returned to the Chester Avenue and Kassia Street addresses the plaintiff had visited earlier in the evening. There they found an aggregate of 1,254 pounds of marijuana.

The police notified the IRS of the plaintiff's arrest and the events surrounding it. The IRS then began to investigate the plaintiff's financial condition. It could find no record of the plaintiff ever having filed a tax return. His wife had filed as a single taxpayer under the last name Frye. Between the years 1979 and 1980, she reported an average annual income of $8,000. In 1980, the plaintiff and his wife purchased a $133,000 house. They paid $1,000 cash as earnest money, made a down payment of $69,000 by cashier's check, and borrowed the remainder. Their lender reported that the plaintiff and his wife always make their monthly payments of $858.00 on time. In December of 1980 the plaintiff quitclaimed his interest in the home to his wife for no consideration. The Government also introduced receipts at trial which showed the plaintiff had paid bills in February and March of 1983 totalling $2,591.83.

Shortly after the plaintiff's arrest, an anonymous source telephoned the Government that a U-Haul truck and several cars were parked in the plaintiff's yard on Greer Road. The Government went to the plaintiff's house the next day and saw tire tracks in the yard. The presence of the U-Haul was confirmed by two of the plaintiff's neighbors. The Government's repeated attempts to contact the plaintiff were unsuccessful.

■ Given the circumstances recounted above, the Government's termination assessment against the plaintiff was reasonable. The plaintiff's alleged involvement in a profitable criminal enterprise, his possession of large amounts of cash, and his failure to file tax returns in the past made it reasonable for the Government to conclude that the plaintiff had and would continue to conceal his assets. The plaintiff's alleged removal of his belongings from his dwelling, furthermore, made it reasonable to presume he was concealing himself as well as his assets. Finally, plaintiff is dissipating his assets by paying his attorneys for defending him against his criminal charges and pursuing this review. The plaintiff himself asserts in his petition to this court that this assessment has placed him in a precarious financial condition, so it is reasonable to assume his solvency is in question. Thus, not one but all of the factors which make a termination assessment reasonable are present in this case.

The plaintiff's only serious challenge to the reasonableness of the termination assessment is that it is unreasonable to attribute ownership of the marijuana found at the Chester Avenue and Kassia Street residences to him. The mere fact that the plaintiff was not charged with criminal possession of the marijuana, however, does not disprove the possibility that the plaintiff did have a possessory interest in the marijuana.

■ As for the propriety of the amount assessed, the plaintiff had the burden of proving it was inappropriate. 26 U.S.C. § 7429(g)(2). In this case, the taxpayer was assessed on the amount of income he would have to have made to purchase the

marijuana in issue. The Government estimated the marijuana cost $230 per pound. Since the plaintiff reported no income in 1982, the Government presumed he must have earned the money necessary to make the purchase in 1983. As with the reasonableness of the assessment, plaintiff's primary challenge to the propriety of the amount assessed is that it is inappropriate to attribute ownership of the 1,254 pounds of marijuana found at residences other than his own to him. For the reasons stated above, such an argument fails to meet the necessary burden of proof.

An appropriate order will be entered.

## ORDER

In accordance with the memorandum contemporaneously filed, the plaintiff's petition is hereby dismissed.