**Ernesto LOPEZ, Plaintiff,**

v.

**INTERNAL REVENUE SERVICE and the United States of America, Defendants.**

**No. 85 CV 563.**

United States District Court, E.D. New York.

April 1, 1985.

Kase & Druker by James O. Druker, Garden City, N.Y., for plaintiff.

Raymond J. Dearie, U.S. Atty., E.D.N.Y., by Michael C. Cavanagh, Asst. U.S. Atty., Brooklyn, N.Y., for defendants.

## MEMORANDUM AND ORDER

PLATT, District Judge.

This is a civil action under 26 U.S.C. § 7429 to review the reasonableness of jeopardy termination proceedings brought against plaintiff Lopez by the Internal Revenue Service (IRS) in determining plaintiff's 1984 tax liability. For the reasons stated herein, this Court finds that the IRS's actions were both reasonable and appropriate under the circumstances and that plaintiff has failed to demonstrate that the amount assessed was inappropriate.

## FACTS

On October 26, 1984, plaintiff was arrested when he allegedly delivered 211.777 ounces of cocaine to an undercover agent. IRS Notice of Termination Assessment, dated December 18, 1984. The following day, pursuant to a warrant to search certain premises under plaintiff's control, an additional 1,203.525 ounces of high quality

cocaine and three handguns were found. *Id.* The wholesale value of the cocaine was conservatively estimated to be worth $995,134.00, or roughly one million dollars. *Id.*

On December 18, 1984, the IRS, pursuant to 26 U.S.C. § 6851,[1] served Mr. Lopez with a jeopardy termination assessment which closed his 1984 taxable year on November 30, 1984, and assessed him with an income tax liability for that year of $492,038.40, which was due and payable immediately. The IRS arrived at this tax liability figure by a practice that it commonly uses. *See, e.g., Davis v. United States,* 511 F.Supp. 193, 198–99 (D.Kansas 1981). The IRS takes the value of the contraband seized (*i.e.,* its value to the person from whom it was seized) and deems this figure to be his or her taxable income, adds to it any other known income and makes adjustments for dependents. Here, because of the quantity of cocaine found and the size of the initial alleged sale, plaintiff was assumed to be a wholesaler; the wholesale value of the cocaine seized was deemed roughly to be his taxable income for 1984 and his tax liability was set accordingly.

In seeking to enforce its assessment, Mr. Lopez was served with a levy of assessment which was duly filed with the Suffolk County Clerk in New York and with the banks in which Mr. Lopez was known to maintain accounts. Subsequently, levies were made upon a $449.21 account he maintained at Chemical Bank and upon a $2,849.14 account maintained at European American Bank.

Before turning to an analysis of the reasonableness of this jeopardy assessment, a few additional facts concerning plaintiff's circumstances should be set forth, as well as a statement of how this action came to be heard before this Court.

Plaintiff was born in Puerto Rico, and has been a resident in the continental United States for 36 years. He served in the United States Armed Forces from 1950 through 1958 and was honorably discharged with the rank of Staff Sergeant.

He has owned the house in which he currently resides for 17 years. By his attorney's account, he also owns another house which is used for income and investment purposes.

Mr. Lopez is the sole shareholder of a cleaning business which he operates out of his home. The business is reported to be "quite successful" by his attorney. It has nine employees and seven vehicles. During Mr. Lopez's present absence, his children are currently operating the business. His wife has been employed for the last several years at the Uniflex Laboratories in Westbury, Long Island.

As previously reported to the IRS, Mr. Lopez's adjusted gross income was $25,858 in 1981, $27,405 in 1982, and $31,557 in 1983.

In the IRS's notice to Mr. Lopez, it noted that given the amounts of income he had been reporting in contrast with the wholesale value of the cocaine found on his premises and his "alleged illegal activities", a termination jeopardy assessment was "recommended to prevent concealment, dissipation or transfer of assets to others" or, in short, to prevent any actions which would "prejudice" or "render ineffectual" the col-

---

1. 26 U.S.C. § 6851(a)(1) states:

   If the Secretary finds that a taxpayer designs quickly to depart from the United States or to remove his property therefrom, or to conceal himself or his property therein, or to do any other act (including in the case of a corporation distributing all or a part of its assets in liquidation or otherwise) tending to prejudice or to render wholly or partially ineffectual proceedings to collect the income tax for the current or the immediately preceding taxable year unless such proceeding be brought without delay, the Secretary shall immediately make a determination of tax for the current taxable year or for the preceding taxable year, or both, as the case may be, and notwithstanding any other provision of law, such tax shall become immediately due and payable. The Secretary shall immediately assess the amount of the tax so determined (together with all interest, additional amounts, and additions to the tax provided by law) for the current taxable year or such preceding taxable year, or both, as the case may be, and shall cause notice of such determination and assessment to be given the taxpayer, together with a demand for immediate payment of such tax.

lection of income tax currently assessed against him.

Plaintiff was indicted in October 1984 by a Nassau County Grand Jury and is presently being held in the Nassau County Correctional Center on a $10,000,000 secured insurance bond or $5,000,000 cash bail. To date, he has been unable to make bail and is awaiting trial.

Before coming to this Court, plaintiff exhausted his administrative remedies without success.

## HEARING AND REVIEW

On March 1, 1985, the plaintiff's and Government's attorneys appeared before this Court. There was some discussion, albeit unclear, over whether plaintiff's attorney really wanted his client to testify on his own behalf to establish the inappropriateness of the tax assessment. Previously, on February 27, 1985, the Court declined to sign a writ of habeas corpus to secure the presence of plaintiff for the March 1 hearing. The Court declined to sign the writ because of its concern that plaintiff might not be fully aware of the extent to which his testimony might expose him to further criminal liability.

At the March 1 appearance, plaintiff's counsel argued that his client should be able to receive "limited immunity" because the Government placed his client in a "Catch-22" situation; that is, the only way that his client could prove the unreasonableness of the tax assessment was through his own testimony, but, if he were to testify plaintiff risked further criminal liability. The Court found this idea of limited immunity quite novel and gave plaintiff's attorney leave to brief this issue for the Court by March 6 and gave the Government until March 16 to reply. On March 1st, the Court also stated that unless plaintiff testify or presented new facts, it was inclined to uphold the IRS's action based on the undisputed facts presently before it.

At this time, plaintiff's attorney also argued that the Court should take what would essentially be judicial notice of the fact that it is "common knowledge" that large-scale drug transactions are done on a consignment basis and often involve more than one person. Thus, if "these facts" were assumed, plaintiff's counsel contended that it would clearly be unfair to treat the value of the cocaine as liquid taxable income and attribute it all to plaintiff. Indeed, the Court did not disagree that the unfairness would be evident if this "common knowledge" could be proved applicable to Mr. Lopez's case, but proof of this, again, turned on Mr. Lopez's willingness to testify and/or his ability to present new facts.

Finally, also on March 1st, plaintiff's attorney urged that the use of a jeopardy assessment is only appropriate when the taxpayer appears to be about to flee the country and remove or conceal his assets. Thus, he reasoned that since plaintiff was in jail, his family and community ties strong, and his (known) assets largely non-liquid, the jeopardy assessment was inappropriate. As is discussed later, fear of flight and asset removal are only some of the considerations the IRS weighs when issuing a jeopardy assessment under 26 U.S.C. § 6851.

On March 6, plaintiff's attorney filed a memorandum of law which largely summarized his arguments of March 1st. It presented no new facts, nor did it address the issue of limited immunity, as plaintiff had apparently decided not to testify.

In light of this decision, the Government's attorney wrote the Court a letter, dated March 14, stating that since the issue of limited immunity was moot, it did not appear that a formal reply brief was necessary to address the reasonableness of the IRS' action under the circumstances.[2] The

---

**2.** As indicated above, the Court was prepared to affirm the IRS's action at the *de novo* hearing on March 1, two days after this action was commenced, but at the request of the plaintiff, the Court adjourned the hearing to enable his attorney to submit a brief on his claim that his client was entitled to limited immunity with respect to any testimony that his client would give if he were called to testify. According to the agreed-upon briefing schedule, plaintiff's

letter went on to summarize the arguments the Government made on March 1st. The Court concurred in the Government's opinion that a formal reply brief was not necessary since the immunity issue was moot, no new facts had been presented in plaintiff's brief, and the Court had already indicated that it had sufficient undisputed facts to uphold the IRS's action.

## DISCUSSION

Under 26 U.S.C. § 7429(b), a taxpayer who has been subject to a termination assessment, such as we have here, has the right to have the IRS's action reviewed by a U.S. District Court after the taxpayer has exhausted his administrative appeals.

On review, 26 U.S.C. § 7429(b)(2) states that:

[T]he district court shall determine whether or not—

(A) the making of the assessment under section 6851 ... is reasonable under the circumstances, and

(B) the amount so assessed ... is appropriate under the circumstances.

■ As to these two determinations, the District Court is to perform an independent, de novo review. Loretto v. United States, 440 F.Supp. 1168, 1171 (E.D.Pa. 1977). As to the standard to be used in reviewing the evidence, "reasonable under the circumstances" appears to mean something more than "not arbitrary or capricious" and something less than "supported by substantial evidence." Id. at 1172.

■ Concerning burdens of proof under 26 U.S.C. § 7429(g), it is the Government's burden to show the reasonableness of making the termination assessment and it is the taxpayer's burden to show the inappropriateness of the amount assessed.

■ The District Court's determination of such assessments is not reviewable. 26 U.S.C. § 7429(f). However, the taxpayer is free to contest the issue of ultimate tax liability either through an action for a refund or in an action in the Tax Court if the amount of the assessment remains disputed. See Rogers v. United States, 511 F.Supp. 82, 84 (D.Minn.1980); Loretto v. United States, 440 F.Supp. at 1168.

Thus, the decision of this Court, now, does not bear on what Mr. Lopez's ultimate tax liability for 1984 will be, but rather the limited question of the reasonableness of the termination and the amount thereof. This point is important to keep in mind because if it is found at Mr. Lopez's pending criminal trial that he was merely one of many sellers and/or only had the cocaine on consignment—as his attorney had urged this Court to accept as "common knowledge" without proof—then indeed, the size of this initial liability assessment will certainly be decreased.

■ Given the undisputed facts, this Court finds that the Government has met its burden of showing that the termination assessment was reasonable under the circumstances. The facts as set forth indicate that there was a great discrepancy between Mr. Lopez's known assets—his two small bank accounts, his houses, and his reported income on the one hand and on the other $1,000,000 worth of cocaine, valued at wholesale prices. Given this apparent discrepancy, it was not unreasonable for the IRS to assume that Mr. Lopez had been a cocaine dealer of some magnitude for a long time, that he had possibly not been reporting his illicit profits, and that he was probably hiding these profits in unknown assets. It was also not unreasonable for the IRS to wish to "freeze" the situation.

The power to freeze the taxpayer's assets is clearly given to the IRS in the language of 26 U.S.C. § 6851, which permits the IRS to issue a jeopardy assess-

---

supplemental memorandum was due on or before March 6 and was filed by then. The Government's answering papers were due on or before March 16 and were actually filed March

14. Since the adjournment was at the plaintiff's request, the time for the Court to issue the decision herein would normally run until 20 days from the last submission, or April 3, 1985.

ment if it finds "that a taxpayer designs ... to do any other act (including in the case of a corporation distributing all or a part of its assets in liquidation or otherwise) tending to prejudice or render wholly or partially ineffectual proceedings to collect the income tax." This power can be invoked not merely—as plaintiff's attorney urged—when it appears that plaintiff is planning to flee the country with his assets or become a fugitive and conceal his assets.

In the present case, if Mr. Lopez were to attempt to assign the property he now owns to members of his family or sell it or as sole shareholder of his cleaning business if he were unilaterally to liquidate its assets, the IRS's ability to collect Mr. Lopez's income tax would most certainly be prejudiced and rendered partially or wholly ineffectual.

Second, this Court finds that the amount assessed was not inappropriate. The IRS's common method for calculating tax liability when a taxpayer is found with contraband has already been set forth. Though this method may be a crude estimate, the Court finds nothing obviously inappropriate with its use.

Again, the Court wishes to underscore that the discrepancy between plaintiff's apparently modest life style and assets and the value of the cocaine may well be explained by the fact—yet to be proved—that the cocaine was being sold on consignment or through a group. But, plaintiff has not yet proved this and has not come forward with facts to show that the amount assessed was inappropriate.

Finally, the Court notes that it has not been given reason to believe plaintiff's family has been rendered destitute or without a source of income by this assessment, as the children are allegedly running their father's cleaning business and his wife apparently has a job.

For the reasons set forth above, this Court affirms the IRS's action.

SO ORDERED.