Delfo VANERIO and Marlene
Vanerio, Plaintiffs,

v.

INTERNAL REVENUE
SERVICE, Defendant.

No. 85 CV 3921.

United States District Court,
E.D. New York.

March 10, 1986.

Pappas & Russo, Bellmore, N.Y. (Richard Reers, Vincent Russo, Stewart D. Weinreb, of counsel), for plaintiffs.

U.S. Dept. of Justice, Tax Div., Washington, D.C., Kenneth C. Brown, of counsel, for defendant.

## MEMORANDUM AND ORDER

### McLAUGHLIN, District Judge.

This is an action for judicial review of "termination assessments" of federal income tax liability made against the plaintiffs pursuant to 26 U.S.C. § 6851. For the reasons stated below, the assessments are upheld.

*Facts*

The termination assessments made by the Internal Revenue Service ("IRS") against the taxpayers resulted from a criminal investigation, the pertinent facts of which are as follows:

Prior to July 26, 1985, Detective James Perretto of the New York Drug Enforcement Task Force was notified by a confidential informant that certain individuals— Nelson and Gladys Segovia—were trafficking in substantial amounts of cocaine. The Task Force agents instructed the informant to arrange to purchase cocaine from the Segovias.

At approximately 6:00 p.m. on the evening of July 26, 1985, the informant phoned the Segovias and agreed to purchase two kilograms of cocaine. The Segovias indicated that they would arrange for delivery of the cocaine and that the informant could pick it up later that evening.

At approximately 7:30 p.m., Investigator Jonigan, who was conducting surveillance from a parked van, observed the plaintiffs—Delfo and Marlene Vanerio—entering the Segovias' building. Delfo Vanerio was carrying a brown shoulder bag. Approximately five minutes later, Delfo Vanerio left the building without the shoulder bag. Several minutes later, his wife, Marlene Vanerio, also exited the building.

Shortly thereafter, the informant confirmed that a kilogram of cocaine had been delivered to the apartment. Accordingly, the agents executed a warrant to search the apartment. The search revealed a kilogram of cocaine inside a brown bag similar to the one Delfo Vanerio had been carrying.

The Segovias were arrested and interrogated. They revealed that the kilogram of cocaine had been delivered by a man with a brown bag.

Later that evening, the agents observed Delfo Vanerio driving back and forth in front of the Segovias' building. When the agents approached Vanerio's vehicle, Van-

erio stepped out and shouted "I have a suspended license." Vanerio then gave a suspicious and inconsistent explanation for his presence at the scene.

The agents discovered that Vanerio possessed a beeper linked to a number that was listed in the Segovias' telephone book. In addition, the agents found a green alien registration card bearing Vanerio's picture, but registered in a different name.

Upon interrogating Mrs. Vanerio, the agents discovered that she claimed that the couple lived on 164th Street in Queens, while Mr. Vanerio claimed that they lived in Great Neck. In addition, Mrs. Vanerio's driver's license indicated that her address was Utopia Parkway, Queens.

Shortly thereafter, the Vanerios were arrested. The Segovias denied knowing Delfo Vanerio, and vice-versa.

At the time of Delfo Vanerio's arrest, he had in his possession $1,200 in cash, a receipt for the recent purchase of a car for $9,025 in cash, and records which the agents believed depicted cash payments in connection with narcotic sales. A later search of Vanerio's residence at 164th Street, Flushing revealed money orders in the amount of $80,000, and bank records revealing approximately $24,368.59 in deposits to the plaintiffs' joint accounts during the period from January 1, 1985 through July 26, 1985.

The IRS later determined that Delfo Vanerio had been using a social security number with a phony name, and that neither of the plaintiffs had filed income tax returns. The IRS also determined that the Vanerios had made substantial expenditures over the period from January 1, 1985 to July 26, 1985, with no apparent source of income other than the illegal sale of drugs.

Moreover, the IRS discovered that prior to his arrest, Delfo Vanerio had contracted to sell his house in Great Neck, with the closing scheduled for August 15, 1985.

Finally, the Vanerio's telephone bill revealed numerous calls to Florida, Texas, Puerto Rico, Colombia and Argentina.

Based upon all this information, the IRS determined that the collection of taxes would be in jeopardy if termination assessments were not made. Accordingly, by letters dated August 14, 1985, the plaintiffs Delfo and Marlene Vanerio were notified that they were being assessed $63,559.18 and $7,171.18 respectively.

On September 13, 1985, plaintiffs filed a written protest seeking administrative review of the termination assessment. On October 25, 1985, plaintiffs were notified that their protests were denied.

On October 28, 1985, plaintiffs filed this action pursuant to 26 U.S.C. § 7429(b) seeking judicial review of the assessment.

Since filing this action, plaintiffs have sold their Great Neck house, and have paid a portion of the assessment. Moreover, on January 27, 1986, after a jury trial before the Honorable Charles P. Sifton of this district, Delfo Vanerio was found not guilty of all charges against him and was released from incarceration.

### Discussion

A termination assessment, as authorized by Section 6851, provides the IRS with a mechanism to protect revenues believed due from a taxpayer who "designs to do an act which would tend to prejudice proceedings to collect the income tax ... unless such proceedings are brought without delay." Treas.Reg. § 1.6851–1(a)(1). Normally, the United States may not assess and collect taxes until a statutory notice of deficiency has been issued to the taxpayer, enabling him to seek pre-collection review by the Tax Court. Thus, the purpose of the termination assessment is "to freeze the assets of the taxpayer until the existence and amount of tax liability is determined." *United States v. Doyle*, 660 F.2d 277, 280 (7th Cir.1981).

Since this procedure can work a serious hardship on the taxpayer, Congress has provided for speedy, albeit limited, judicial review.

Section 7429 provides that, within 20 days after an action is commenced, the

district court is to make an independent, *de novo* determination of whether the making of the assessment was reasonable and whether the amount assessed was appropriate. *Loretto v. United States*, 440 F.Supp. 1168, 1171 (E.D.Pa.1977). This limited review is not, therefore, a trial on the merits of plaintiffs' tax liabilities. *Id.* at 1175. Moreover, the district court's determination in a case such as this is non-reviewable. 26 U.S.C. § 7429(f).

■ As the government correctly points out, the United States of America is the real party in interest in this action. *See Vernon v. United States*, 586 F.Supp. 115, 117 (M.D.N.C.1984). Accordingly, the government's motion to substitute the United States as defendant in place of the IRS is granted.

With this brief background, I turn to the issues presented by this case.

### 1. *The 20-day time limit*

■ As previously stated, the statute provides for a determination within 20 days after the action is commenced. This action was commenced on October 28, 1985. Defendant was served a few days thereafter. However, defendant did not appear in the action until January 6, 1986.

On January 24, 1986, this Court received a letter from the defendant advising the Court of the statutory time limit. A telephone conference was held immediately thereafter between the attorneys and my law clerk, during which the attorneys agreed to a briefing schedule and a hearing date.

Plaintiff now argues that the defendant's failure to answer the complaint within 20 days requires this Court to abate the assessment. Several courts have held, however, that it is the taxpayer who must bear the responsibility of informing the district court of the statutory time constraint. *See, e.g., United States v. Doyle*, 660 F.2d 277, 280 (7th Cir.1981). Indeed, at least one court, faced with similar facts, held that where the taxpayer did not insist on a determination within twenty days, the dis-

trict court did not err in addressing the merits of the action despite the government's untimely answer. *See Meadows v. United States*, 665 F.2d 1009, 1010, 1012 (11th Cir.1982).

Accordingly, I find that while the government's untimely answer is a factor to be considered in determining whether the termination assessment was, in fact, reasonable under the circumstances, it does not preclude this Court from making that determination.

### 2. *Whether the termination assessment was reasonable?*

■ The government bears the burden of proving that the making of an assessment was reasonable under the circumstances. 26 U.S.C. § 7429(g)(1). "Reasonable under the circumstances means something more than 'not arbitrary or capricious,' and something less than 'supported by substantial evidence.'" *Loretto v. United States, supra*, 440 F.Supp. at 1172. In making its determination, the Court is required to view the information available to the IRS at the time the assessment was made, together with any after-acquired information, including that submitted by the taxpayer. *Id.* at 1173.

■ The standards to be employed in determining whether an assessment is reasonable are (1) whether the taxpayer is or appears to be planning to quickly depart from the United States or to otherwise conceal himself; (2) whether the taxpayer is or appears to be designing to place his property beyond the reach of the government either by removing it from the United States, or by concealing it, or transferring it to other persons; or (3) whether the taxpayer's financial solvency appears to be imperiled. *Cantillo v. Coleman*, 559 F.Supp. 205, 207 (D.N.J.1983).

■ Upon examining the evidence in this case, I conclude that the government has met its burden. Clearly, it was reasonable for the IRS to conclude from the facts in this case that Delfo Vanerio was earning income through illegal activities. *Cf. Lor-*

*etto v. United States, supra,* 440 F.Supp. at 1174. The fact that Vanerio ultimately was acquitted on criminal charges, while a factor, is not dispositive, since the standard of proof required in a criminal case is substantially greater than that required in this proceeding. *See Cantillo v. Coleman, supra,* 559 F.Supp. at 207.

In light of (1) Delfo Vanerio's apparent involvement in the illegal trafficking of drugs, (2) his and his wife's past failure to file income tax returns, (3) Delfo Vanerio's use of a phony "green card" and social security card registered in another's name, (4) the plaintiff's substantial expenditures with no apparent legitimate source of income, (5) the sale of plaintiffs' house, and (6) plaintiffs' apparent contacts in other countries, it was certainly reasonable for the IRS to conclude that plaintiffs were about to transfer or conceal their assets and, thus, to avoid their tax obligations.

Although the government was delinquent in filing its answer to plaintiffs' complaint, it did move with great dispatch in filing tax liens on plaintiffs' property. Hence, I find that the government's subsequent delay does not substantially undermine the purported necessity for the assessment.

Accordingly, the Court finds that the termination assessment was reasonable under the circumstances.

### 3. Whether the amounts assessed were appropriate?

Having found that the termination assessment was reasonable, the Court must determine whether the amounts assessed were appropriate under the circumstances. The amounts are presumed to be reasonable, and the taxpayers bear the burden of proving that they are inappropriate. *Hecht v. United States,* 609 F.Supp. 264, 266 (S.D.N.Y.1985).

The reviewing Court is not to determine the taxpayers' actual tax liability, and a ruling by this Court will have no effect in a subsequent tax proceeding. *See United*

*States v. Loretto, supra,* 440 F.Supp. at 1175.

Under the circumstances of this case, the Court finds that the amounts assessed were entirely reasonable and appropriate. Plaintiffs dispute portions of the amounts assessed, based upon Delfo Vanerio's acquittal in the drug case and plaintiffs' contention that the money orders were owned by another person.

However, the mere existence of a factual dispute does not invalidate the assessment. *Cf. Hecht v. United States, supra,* 609 F.Supp. at 266. Plaintiffs' challenges are matters more properly resolved before the Tax Court, or, if the tax is paid, in a refund action before a federal district court.

Accordingly, plaintiffs have failed to carry their burden of proving that the amounts were inappropriate.

The Clerk is hereby directed to enter final judgment for the defendant United States.

SO ORDERED.