**Max F. GARCIA, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 88–1413 TEH.**

United States District Court, N.D. California.

Feb. 24, 1989.

Daniel S. Gonzales and Carey & Carey, Palo Alto, Cal., for plaintiff.

Joseph P. Russoniello, U.S. Atty., Jay R. Weill, Chief Tax Div., and Michael D. Howard, Asst. U.S. Attys., San Francisco, Cal., for defendant.

## ORDER

THELTON E. HENDERSON, District Judge.

This matter came before the Court on plaintiff's petition to review termination and jeopardy assessments made by the Internal Revenue Service ("IRS") against plaintiff. After a careful consideration of the evidence produced at the hearing and the post-hearing briefs submitted by the parties, the Court finds that the assessments are reasonable and the amount is appropriate. The action of the IRS is, therefore, affirmed.

*Background*

On January 20, 1988, plaintiff was arrested on bookmaking charges in Sunnyvale, California. In connection with this arrest, numerous bookmaking records were seized by the police. On January 22, 1988, the Internal Revenue Service relied upon these records in making a termination assessment on alleged income tax and a jeopardy assessment on alleged excise tax against plaintiff. After exhausting his administrative remedies, plaintiff brought suit before this Court, pursuant to 26 U.S. C. § 7429(b), for review of the assessments made against him.

*Legal Standard*

26 U.S.C. § 6851(a) authorizes the Secretary of the Treasury ("the Secretary") to make a termination assessment against a taxpayer

[i]f the Secretary finds that [the] taxpayer designs ... to conceal himself or his property therein, or to do any other act tending to prejudice or to render wholly or partly ineffectual proceedings to collect the income tax for the current or the preceding taxable year.

26 U.S.C. § 6861 authorizes the Secretary to impose a jeopardy assessment if the Secretary "believes that assessment or col-

lection of a deficiency ... will be jeopardized by delay."

█ Under 26 U.S.C. § 7429(b)(2), a district court may conduct a de novo review to determine: (A) whether the making of a termination or a jeopardy assessment is reasonable under the circumstances and (B) whether the amount assessed or demanded is appropriate under the circumstances. The government bears the burden of showing that the making of the assessment is reasonable and must provide a written statement of the basis for the amount assessed. The taxpayer, however, assumes the burden of showing that the amount sought is inappropriate. 26 U.S.C. § 7429(g)(1) and (2). "Reasonable under the circumstances" has been liberally construed, for the purposes of § 7429, as something more than "not arbitrary or capricious" but something less than "supported by substantial evidence." *McAvoy v. I.R.S.*, 475 F.Supp. 297, 299 (W.D.Mich. 1979). A summary disposition of the case is permissible, where there is no factual dispute for resolution at trial. *Id.* at 298.

*Discussion*

### 1. *The reasonableness of the assessments*

█ In the present case, the government has established that there was reason to believe that plaintiff was attempting to conceal or transfer his property beyond the government's reach. First, the IRS established that plaintiff used nominees "to hold" his assets. He placed his rare horses and his vehicle in his daughter's name and used his daughter's mailbox, rather than his own, to receive his mail. The evidence also revealed that plaintiff destroyed important records and documents in his efforts to hide his assets.

Moreover, police reports indicated that plaintiff was arrested for bookmaking, that he possessed voluminous betting materials, that he dealt in easily concealable cash, jewelry, and third party checks, and that he purchased his automobile with cash. IRS records also showed that plaintiff has not filed any income tax return for the last several years despite currency transactions showing that he has well over forty thousand dollars ($40,000.00) deposited in the bank.

*Simpson v. I.R.S.*, 573 F.Supp. 146 (M.D. Tenn.1983), upheld the reasonableness of a termination assessment based on similar kinds of facts. There, the taxpayer was allegedly involved in a profitable crime enterprise, possessed large amounts of cash, and failed to file tax returns in the past. Based on this record, the court found that the IRS could reasonably conclude that the taxpayer had concealed and would continue to conceal his assets. Thus, it upheld the government's termination assessment against him.

The jeopardy assessment imposed on plaintiff is also reasonable under the circumstances present in this case. Here, plaintiff failed to pay his taxes for several years and has lost his main source of income. The government's chances of recovering taxes owed by him is, therefore, in serious jeopardy. Plaintiff finds himself in a situation that is analogous to the one the taxpayer faced in *Breider v. U.S.*, 614 F.Supp. 1200 (E.D.Wis.1985). In that case, the court held that it was reasonable to make a jeopardy assessment against a taxpayer who failed to report profits from his illegal gambling business and was of questionable solvency because authorities uncovered his secret enterprise and thereby eliminated his source of income. The government's ability to collect the taxpayer's liability was, therefore, imperiled, making the IRS action reasonable under the circumstances. *Id.* at 1201–02.

Given all of the above, the Court finds that the termination and jeopardy assessments made against plaintiff were reasonable.

### 2. *The appropriateness of the amount*

█ Plaintiff has failed to carry his burden of showing that the amount assessed against him is inappropriate. First, plaintiff's contention that the government did not provide him with the basis for the amount is erroneous. The government produced a written statement containing the information which was used to determine

the amount assessed. *See* Plaintiff's Trial Brief, Exhibits 3 and 4. The Notice of Termination Assessment of Income Tax (Exhibit 3) and the Notice of Jeopardy Assessment and Right of Appeal (Exhibit 4), which was issued by the IRS to plaintiff, stated that the assessment was computed based on the ledger cards, individual wagering sheets, and other information obtained from plaintiff's residence following his arrest.

Plaintiff also asserts that the amount is inappropriate because the IRS failed to take into account the following factors: a) plaintiff was not the only person engaged in the alleged illegal activities and cannot be held responsible for the income and wagering activity of other individuals; b) many wagers were not paid off by clients who failed or refused to pay or who never paid as a matter of practice because they were primarily used to generate additional business; c) the wagers included "lay-off wagers" (wagers by the bookmaker himself when a particular event is attracting one-sided wagers and becomes too risky for the bookmaker).

Plaintiff introduced into evidence the testimony of Benjamin Bordeaux, a paralegal, who declared that based on his review of the records, plaintiff was not the only person taking wagers or receiving income from the alleged bookmaking activities. Mr. Bordeaux testified that the "top sheets," which reflected the total receipts and payments for a week's worth of activity showed that monies were paid out to persons other than plaintiff, namely Shig Shimada. *See* Bordeaux Exhs. 1–1 to 1–9. Mr. Bordeaux also claims that the "client ledgers," which kept track of a client's wagers and payments over time, contained notations showing the name of the handlers of the account. *Id.* Exh. 3. Mr. Bordeaux added up the payments as indicated on the "client ledgers" and came up with a total of $211,049.00. He separated those "client ledgers" allegedly kept for plaintiff's clients and concluded that only $24,329.00, out of the $211,049.00, could be attributed to plaintiff for income tax purposes. Furthermore, Mr. Bordeaux stated that by using the "daily records," doc-

uments that kept track of a client's daily wagers, wins, and loses, he concluded that the net payments made by plaintiff's clients totalled $15,711.00, plaintiff's alleged income figure for income tax purposes. Mr. Bordeaux also testified that plaintiff's share from the $3,832,896.00 in total gross wagers for excise tax purposes was $579,230.00.

Under Mr. Bordeaux's computation, therefore, plaintiff's personal income tax liability is either $2,287.00 (based on the "daily records" showing a net income figure of $15,711.00) or $4,555.00 (based on the "client ledgers" showing a net income figure of $24,329.00). His excise tax liability, according to Mr. Bordeaux, would be $14,480.75 which he arrived at by applying the pertinent tax rate to plaintiff's alleged share in gross wagers totalling $579,-230.00.

Plaintiff's arguments, however, fail to rebut the initial presumption that the amount assessed was proper. *Revis v. U.S.*, 558 F.Supp. 1071, 1079 (D.R.I.1983). The "top sheets" indicate that the total amount won each week were "turned in to" plaintiff. The "daily records" do not demonstrate that other people were involved in the alleged bookmaking operation. Nor was any evidence presented to support plaintiff's claim that many wagers were never paid off.

Moreover, plaintiff's assertion that he was only one of several persons engaged in the alleged gambling enterprise, as reflected in the "client ledgers," does not render the amount inappropriate. In *Vanerio v. I.R.S.*, 629 F.Supp. 1141, 1145 (E.D. N.Y.1986), the court held that the amount was reasonable and appropriate despite the taxpayer's acquittal on drug charges and his contention that the money was owned by another person. "[T]he mere existence of a factual dispute does not invalidate the assessment.... Plaintiff's challenges are matters more properly resolved before the Tax Court, or if the tax is paid, in a refund action before a federal district court." *Id.* *See also Loretto v. U.S.*, 440 F.Supp. 1168, 1175 (E.D.Pa.1977). In *Amyx v. U.S.*, 529 F.Supp. 98, 101 (S.D.Ohio 1981), there was

also a question whether the money belonged to the taxpayer. The court, in finding the amount assessed to be appropriate, reasoned that if the money did not in fact belong to the taxpayer, the taxpayer suffers no harm as a result of the assessment. If, however, the court "were to abate the assessment ... the Government [is put] in a position of possibly never being able to collect the tax due." *Id.* The assessment will simply freeze the assets seized from the taxpayer's residence until such time as "the final question of plaintiff's actual taxable income and tax liability will be determined." *Id.*

Finally, courts have held that the computation of tax deficiencies need not be precise nor accurate where the taxpayer is charged with the operation of a criminal enterprise and has failed to file tax returns in the past. In *Lopez v. I.R.S.*, 614 F.Supp. 1332, 1336 (E.D.N.Y.1985), the court found that the IRS's common method of calculating tax liability, in cases where a taxpayer is allegedly engaged in illegal activities, is "established." The court concluded that "though this method may be a crude estimate, the Court finds nothing obviously inappropriate with its use." *Id. See also De La Fuente v. U.S.*, 596 F.Supp. 643, 645 (M.D.Fla.1984) (Computations based on evidence introduced at the taxpayer's criminal trial was held to be "both reasonable and logical" in light of the taxpayer's failure to file income tax returns for several years and fact that he did not provide the IRS with additional information from which a more accurate determination of tax due could be made.) In short, it is not mandatory that specific sources of alleged unreported income be pinpointed. "Rather, a good faith attempt to measure the deficiencies" will suffice. *Revis*, 558 F.Supp. at 1079–80.

In this case, plaintiff has not persuaded the Court that the amounts assessed are inappropriate under the circumstances. Plaintiff was charged with two counts of illegal bookmaking and IRS records show that he consistently failed to pay his tax liabilities in the past. It reasonably and logically relied on the betting materials that were seized from plaintiff's residence following his arrest. While the method employed to make the assessments may have yielded "crude estimates," there is nothing inappropriate with its use and the IRS is not required to present a precise computation. On the contrary, such a system is necessary to protect the government's ability to collect plaintiff's taxes, particularly in view of plaintiff's attempts to keep his assets beyond the government's reach. To obtain an exact and accurate determination of the amount owed, plaintiff can either petition the Tax Court for a review or file a refund action before a federal district court once the amount has been paid.

Accordingly, and good cause appearing, the Court finds that the termination and jeopardy assessments made against plaintiff are reasonable and that the amount assessed is appropriate.

The IRS action is affirmed and judgment is granted in favor of defendant.

IT IS SO ORDERED.